Joseph CODE, Petitioner-Appellant,

v.

Charles M. MONTGOMERY,
Respondent-Appellee.

No. 85–8273.

United States Court of Appeals,
Eleventh Circuit.

Sept. 22, 1986.

John Dean Marshall, Jr., Atlanta, Ga. (Court-appointed), for petitioner-appellant.

Mary Beth Westmoreland, Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CORRECTED OPINION

KRAVITCH, Circuit Judge:

Joseph Code appeals the district court's denial of habeas corpus relief. Because we conclude that Code received ineffective assistance of counsel as defined in *Strickland v. Washington*, 466 U.S. 668, 104

S.Ct. 2052, 80 L.Ed.2d 674 (1984), we reverse and remand.

## I. BACKGROUND

In 1976, Code was convicted in state court of an armed robbery that had occurred two and a half years earlier at a residence near Bainbridge, Georgia.[1] While incarcerated in Macon on an unrelated charge, Code received three weeks' notice of his impending trial in Bainbridge for the armed robbery offense. He was transferred to Bainbridge one week before the trial. Code steadfastly maintained that he had never before set foot in the Bainbridge area. On Friday, December 10, 1976, three days prior to trial, Code first met George Stacy, his court appointed counsel.[2] Stacy's trial preparation primarily consisted of calling Code's mother and suggesting that she attend the upcoming trial. On Monday, December 13, 1976, Code was tried despite his protests that his attorney was unprepared. When no witnesses, other than the defendant, appeared on Code's behalf, his attorney failed to move for a continuance. Although Code's sole defense was an alibi, at trial Stacy never asked Code where he was on the day of the robbery.

1. Code consistently has maintained that, at the time of the robbery, he was in Macon—a two and a half hour drive away.

2. In a deposition filed in state habeas proceedings, Stacy twice states that "[m]y records disclose that I was appointed on this case and talked to the defendant on April 1, 1976." It is difficult to imagine that Stacy was appointed to represent Code several months before Code's arraignment in Bainbridge or arrest in Macon. In his deposition in federal court, Stacy, relying on his records, testified that he was appointed on either Monday, December 6th; Tuesday, December 7th; or Wednesday, December 8th and met with Code sometime later when he interviewed "four or five" other incarcerated indigents whom he had been appointed to represent. We have previously noted that Stacy "did nothing with respect to [Code's] case until his December 10, 1976, meeting with [Code]." *Code v. Montgomery,* 725 F.2d 1316, 1317 n. 1 (11th Cir.1984).

3. Pursuant to several concerns raised by this court, the district court determined:
   (1) Although Code claimed otherwise, he had not informed Stacy that he worked at the

Code's first state habeas petition was dismissed because he had escaped custody. It was refiled and relief was denied. He filed a federal habeas corpus petition which the district court denied. This court, however, remanded for an evidentiary hearing on Code's ineffective assistance of counsel claim. *Code v. Montgomery,* 725 F.2d 1316 (11th Cir.1984).[3]

In his evidentiary hearing in the federal district court, Code presented alibi testimony placing him in Macon throughout the day of the crime. The district court specifically rejected Code's assertions that he told Stacy that he had been at an April Fool's Day party at the Central Hotel in Macon on the day of the robbery and that Estella Taylor, a co-worker, would so testify.[4] Accordingly, the district court denied Code's ineffective assistance claim.

## II. ANALYSIS

■ In this appeal, Code continues to assert that he was denied a fair trial due to the ineffective assistance of counsel rendered by Stacy. To prevail on an ineffective assistance of counsel claim, a habeas corpus petitioner must show that (1) his

Central Hotel in Macon and was working there on the day of the robbery;
   (2) Although Code claimed otherwise, he had not provided Stacy the names of any Central Hotel employees who might serve as witnesses and;
   (3) Although Code may have moved for a continuance between his December 6 arraignment and December 13 trial, he did not do so through counsel and counsel did not request a continuance because he thought such a request futile.

4. We agree with the explanation advanced by Code's counsel at oral argument: it is not unusual for a person asked to recall who he was with during a six hour period two and a half years earlier to respond with general leads and not specific names.
   The district court noted that Code's assertion that he worked at the Central Hotel was inconsistent with his trial testimony that he had been a cement worker since he was 15. Code points out that his state habeas transcript indicates that he worked as a cement worker after the Central Hotel closed.

attorney's performance was deficient and (2) that the deficient performance prejudiced the defense. *Strickland,* 104 S.Ct. at 2064. Accordingly, we first inquire as to "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 104 S.Ct. at 2066. If counsel erred, we next inquire whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 104 S.Ct. at 2068. A petitioner need not show that but for counsel's errors, the outcome of the proceeding would more likely than not have been different: "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id., see also Nix v. Whiteside,* — U.S. —, 106 S.Ct. 988, 999, 89 L.Ed.2d 123 (1986). The " 'benchmark' of an ineffective assistance claim is the fairness of the adversary proceeding." *Nix,* 106 S.Ct. at 999.

Code alleges two specific instances of ineffective assistance: inadequate pretrial investigation and failure to request a continuance.

### A. *Pretrial Investigation*

#### 1. Attorney Performance

■ Undisputed facts establish that Code's counsel's performance fell below established competency standards. Attorney Stacy interviewed one defense witness: he telephoned Code's mother. He attempted to phone Code's girl friend, Mary Jackson, and testified that he "might have" interviewed one of the five prosecution witnesses. Although he knew that Code's exclusive defense was based on an alibi, Stacy never asked Code's mother where Code was on April 1, 1974, the day of the robbery. Had he asked, he would have learned that although Code's mother had no personal knowledge of Code's whereabouts on April 1, she could have provided him with leads regarding alibi witnesses.[5]

Moreover, during the phone conversation, Code's mother indicated she could not attend Code's trial that coming Monday. Stacy made no attempt to subpoena her even though she was the only potential defense witness with whom he spoke and he erroneously believed she could provide Code's alibi. Instead, he suggested to Code, who was incarcerated, that Code secure his mother's presence at trial.

In his deposition in the district court, Stacy testified that he didn't think it necessary to go to Macon to locate Code's girl friend or other alibi witnesses or to ensure Mrs. Code's presence at trial: "I just don't think I'm required as a practicing attorney to be a taxi boy." Stacy also testified that due to a personality clash, he had to "swallow his pride" in order to represent Code.

The adequacy of a pretrial investigation turns on the complexity of the case and trial strategy. *Washington v. Strickland,* 693 F.2d 1243, 1251 (11th Cir.1982) (en banc), *rev'd on other grounds,* 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here there was only one strategy: an alibi defense. By not inquiring as to Code's whereabouts on the day of the robbery, Stacy's investigation was inadequate. *See Nealy v. Cabana,* 764 F.2d 1173 (5th Cir. 1985); *Gomez v. Beto,* 462 F.2d 596, 597 (5th Cir.1972) (failure to investigate sole defense; failure to subpoena requested alibi witnesses established ineffectiveness); *cf. Aldrich v. Wainwright,* 777 F.2d 630, 637 (11th Cir.1985) (failure to conduct meaningful pretrial investigation satisfies first prong of *Strickland* test).

Under these circumstances we conclude that a competent attorney relying on an alibi defense would have asked Code's mother if she could corroborate the alibi; would have subpoenaed a reluctant witness whom he thought could provide an alibi and would have asked either the witness or the defendant if there were other alibi witnesses.[6] Moreover, a reasonably effective at-

---

5. Mrs. Code's undisputed testimony in the district court indicates that she contacted Estella Taylor shortly after Stacy's call. Had Mrs. Code known the date of the robbery, she might have mentioned it to Taylor who testified that she

was with Code in Macon at the time of the robbery.

6. Code has maintained throughout these collateral proceedings that he told Stacy that his coworkers at the Central Hotel in Macon could

torney would have broadened his investigation once Mrs. Code indicated she was unavailable to testify. Even if Mrs. Code had appeared, Stacy had not investigated to the point where he would have discovered that she was not an alibi witness. *See United States v. Moore,* 554 F.2d 1086, 1093 (D.C. Cir.1976) ("counsel's anticipation of what a potential witness would say does not excuse the failure to find out"). *Strickland* embraced this court's prior ineffective assistance analysis to the extent that:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

104 S.Ct. at 2066. Here, Stacy did not contact both of the alibi leads Code had provided him. Stacy's limitation on his pretrial investigation is wholly unsupported by reasonable professional judgment: although his sole strategy was to present an alibi defense, he terminated his investigation without determining whether the one witness he contacted could provide an alibi. In short, Stacy attempted to present an alibi defense with no alibi witnesses.

### 2. Prejudice

■ As in *Nealy,* where prejudice was established, Code's trial was a mere swearing match. In *Nealy,* the defendant claimed an alibi, although the prosecution's witness claimed he and the defendant acted as accomplices. As in *Nealy,* Code argues that the testimony of an alibi witness "might have affected" the jury's comparison of the alleged accomplice's testimony with the defendant's. *Nealy,* 764 F.2d at 1174. The state distinguishes *Nealy* arguing that because two victims identified Code, the jury did not have to rely solely on a credibility choice between Code and his

alleged accomplice. Accordingly, unlike *Nealy,* it is less certain that alibi witnesses might have swayed the jury. Nonetheless, Code's defense was sufficiently prejudiced by Stacy's ineffectiveness to the extent that our "confidence in the [trial] outcome" is undermined. *Strickland,* 104 S.Ct. at 2068.

Code was tried in December, 1976 for a robbery that occurred in April 1974. The state's case primarily entailed the testimony of the three victims and an alleged accomplice. Although they had only seen the robber during the course of a robbery that occurred two and a half years earlier, two of the victims identified Code.[7] We do not determine whether, despite the eyewitness testimony, alibi testimony *would* have resulted in Code's acquittal. *See Strickland,* 104 S.Ct. at 2068 (rejecting outcome determinative test for evaluating ineffective assistance claims). We conclude that, in this case, Stacy's failure to adequately investigate and present Code's alibi defense deprived Code of a fundamentally fair trial. *See id.* at 2071. The state correctly points out that Code's case is distinguishable from *Nealy* in that here the jury could have rejected the alleged accomplice's testimony and still have convicted. Code's case and *Nealy* are identical, however, in a more important regard: in both cases appointed counsel's shortcomings effectively deprived defendants of any defense whatsoever. Failure to conduct a pretrial investigation and interview witnesses is not a per se sixth amendment violation. *See Aldrich,* 777 F.2d at 636. We cannot confidently say, however, that the case against Code *could* have withstood the introduction of the alibi testimony readily discoverable at the time of trial and subsequently proffered in habeas corpus proceedings.

---

vouch for his whereabouts. The district court found, however, that Code had only supplied Stacy with two leads: his mother, Olivia Code, and his girl friend, Mary Jackson.

**7.** Dock Gibson, who was shot during the robbery, identified Code in court testifying "that is

a face I'll never forget." He could not recall, however, whether Code had a beard at the time of the robbery. Gibson also testified that Code had shot him; however, another prosecution witness, alleged accomplice Sammy Bell, testified that a third accomplice shot Gibson.

 

## B. *The Continuance*

Code argues that Stacy's failure to move for a continuance when no defense witnesses other than himself appeared for trial is an alternative, independent instance of ineffective assistance. Had Stacy conducted a pretrial investigation and concluded that there were no credible alibi witnesses, Stacy would not be ineffective for failing to move for a continuance. *See Jones v. Smith,* 772 F.2d 668, 673–74 (11th Cir. 1985) (failure to request continuance not ineffective where there was no showing that alibi witnesses existed), *cert. denied,* — U.S. —, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986); *Gravenmeir v. United States,* 399 F.2d 677 (9th Cir.1968) (same). Here, however, Code has shown that at least one alibi witness, Estella Taylor, did exist and would have testified. Because Code relied entirely on an alibi defense, competent counsel would have moved for a continuance when *no* alibi witnesses other than the defendant appeared on the day of the trial.[8]

Code was transported to Bainbridge on December 4, 1976 and tried exactly one week later. He first met with his attorney on the Friday preceding his Monday trial. It is debatable whether counsel could have adequately prepared Code's alibi defense over a weekend. It is not debatable, however, that an attorney who has neither adequately interviewed nor subpoenaed *any* witnesses further compounds error by failing to move for a continuance. We conclude, therefore, that the failure to move for a continuance was both professionally deficient and prejudicial, and further abridged Code's sixth amendment rights.

## III. CONCLUSION

We express no opinion as to Code's guilt or innocence. We grant relief because we cannot say that Code has had a fair trial: he had a substantial alibi defense and but for his attorney's deficient performance, he would have presented it.

In light of the above we REVERSE and REMAND with instructions to grant the writ of habeas corpus.

---

8. Code suggests that Stacy's failure to request a continuance was the product of Stacy's conflict of interest. Had Stacy requested the continuance, the court would have realized that Stacy's pretrial investigation was inadequate because he would have had to request the continuance due to the absence of *unsubpoenaed* witnesses; one of whom he had never spoken with.