**UNITED STATES of America,**

v.

**Luis TURUSETA.**

No. 90–347–CR.

United States District Court,
S.D. Florida.

May 25, 1994.

Kendall Coffey, U.S. Atty., Juan M. Vargas, Asst. U.S. Atty., Miami, FL, for U.S.

Stephen H. Rosen, Coral Gables, FL, for Turuseta.

## RECONFIRMED ORDER DENYING MOTION TO VACATE SENTENCE

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon Petitioner/Defendant Luis Turuseta's motion to vacate sentence, on the grounds of ineffective assistance of counsel, pursuant to 28 U.S.C. § 2255. For the reasons stated below, the Court denies Turuseta's motion.

### PROCEDURAL BACKGROUND

*I.  Pre-trial Stage:*

On Sunday, April 29, 1990, a mail bag containing ten kilograms of cocaine arrived at Miami International Airport, aboard Eastern Flight # 968 from Barranquilla, Colombia. After conducting an investigation, the government charged Defendant Luis Turuseta with the following drug-related offenses: conspiracy to possess with intent to distribute cocaine; possession with intent to distribute cocaine; conspiracy to import cocaine; and importation of cocaine. The indictment charging these offenses was filed on May 31, 1990.

Turuseta retained Peter Heller, Esq. and Stanley J. Bartel, Esq. to represent him. Prior to trial, Turuseta's attorneys filed numerous motions, including: motion for bill of particulars and motion to dismiss indictment, both filed on July 2, 1990; notice of alibi witnesses, filed November 2, 1990; notice of additional alibi witnesses, filed November 5, 1990; and several motions for continuance.

*II.  Trial Stage:*

The matter came for trial before the undersigned District Judge and a jury on February 18, 19, and 20, 1992. The government presented evidence, which the jury found credible, tending to prove the following facts.

On Sunday, April 29, 1990, Eastern Flight # 968 arrived at Miami International Airport from Barranquilla, Colombia, at approximately 7:30 P.M. Alerted by a drug-sniffing dog to the presence of cocaine in a mail bag that had been unloaded from the aircraft, a customs inspector initiated surveillance. The inspector observed a person wearing an Aircraft Services International ("ASI") uniform pick up the bag, place the bag on a tug, and drive the tug away from the aircraft. The driver of the tug then proceeded to a tunnel area, where the inspector lost him. An on-the-scene investigation ensued.

The investigators questioned an ASI supervisor, Steve Smith. Smith told the investigators that he was at an airport mail distribution facility when the tug driver entered it. According to Smith, the tug driver handed him a bag, asked him to place the bag on the mail facility's conveyor belt, and drove away. The bag was recovered from the mail facility and found to contain ten kilograms of cocaine. Smith initially identified the tug driver as Luis Tapia, an ex-employee of ASI. Despite security measures immediately imposed at the employee parking lot, the customs investigators were unable to apprehend their suspect at the airport. Therefore, the investigators went to Tapia's home and arrested him.

Subsequent to Tapia's arrest, however, upon viewing Tapia's photograph, Smith realized that he had given the customs investigators the wrong last name. The investigators then provided Smith with a picture of Luis Turuseta, an ASI employee working at the time as a baggage and cargo handler servicing Eastern Airline flights. After seeing Turuseta's picture, Smith declared him to be the tug driver. Tapia was released and Turuseta arrested. At trial, Smith made an in-court identification of Turuseta.

The government provided additional credible evidence linking Turuseta to the cocaine shipment. ASI employee Luis Sanchez testified that he had seen Turuseta, dressed in his ASI uniform, climb into one of flight # 968's cargo bins, unload the bin that contained the mail bag, put the bag on a tug,

418

and drive away. Sanchez further testified that, six weeks after the incident, Turuseta admitted to him that he had eluded surveillance by leaving the airport through the baggage claims area, calling a relative to pick him up, and retrieving his car from the employee parking lot the next day.

Turuseta's attorneys did not present an alibi defense, despite their having filed two notices of alibi witnesses.[1] The defense attorneys presented the testimony of only one of the alibi witness listed in the notices: Sonia Turuseta, the defendant's wife. Through Sonia Turuseta, the defense introduced evidence regarding a communion party that had taken place on Sunday, April 29, 1990. The evidence included a commemorative card, a photograph showing that the Turusetas and their infant son were present at the party, and a videotape of the party also showing the Turusetas. Sonia testified, however, that her husband had left the party between the hours of 6:30 P.M. and 10:00 P.M. because he had been called to report to work. According to Sonia, moreover, Turuseta was wearing his work uniform when he returned to the communion party.

In rebuttal, the government presented evidence that Turuseta was not scheduled to work that Sunday, and had not been asked to report to work by his ASI supervisors. Also in rebuttal, another airport worker, Ricardo Robinson, testified that he had seen Turuseta near the employee break room around 5:00 P.M. that Sunday, had seen him again unloading an aircraft, and had played dominoes with him at the employee break-room sometime between the hours of 6:00 P.M. and 7:00 P.M. A final rebuttal witness, Guadalupe Murillo, claimed to have seen the Turusetas outside the house where the communion party was being held when she herself left the party at approximately 5:10 P.M.

The jury found Turuseta guilty as to all four charges.

### III. Post-trial Stage:

Turuseta filed various post-trial motions, including a motion for new trial, which the

Court denied on May 13, 1992. On June 25, 1992, after having obtained new counsel, Turuseta filed an "amendment to motion for new trial," asserting for the first time ineffective assistance of counsel. Turuseta claimed that his attorneys had been ineffective in the following respects: they failed to effectively investigate and present an alibi defense; they failed to zealously advocate Turuseta's case; and they failed to move for suppression, prior to trial, of Turuseta's in-court identification by ASI supervisor Smith. Because Turuseta's "amendment to motion for new trial" was untimely, yet raised issues of Constitutional proportion, the Court decided to treat Turuseta's claim as a motion to vacate sentence, pursuant to 28 U.S.C. § 2255. Accordingly, on December 4, 1992, after sentencing Turuseta, the Court held an evidentiary hearing on Turuseta's motion to vacate sentence. The evidentiary hearing spanned three sessions, with the last installment completed on December 11, 1992. On December 23, 1992, Turuseta filed a timely notice of appeal from his conviction and sentence.[2] On January 28, 1993, in compliance with the Court's order, Turuseta filed a post-hearing memorandum in support of his motion to vacate, to which the government responded, and Turuseta replied.

On April 16, 1993, the Court issued an order denying Turuseta's motion to vacate sentence. In that order, the Court addressed the government's contention that Turuseta's notice of appeal, filed December 23, 1992, divested the Court of jurisdiction to proceed with consideration of the previously filed section 2255 motion. The Court found that the case presented extraordinary circumstances, which permitted the Court to address the section 2255 motion despite the pendency of Turuseta's appeal. The Eleventh Circuit, however, found to the contrary. On September 20, 1993, it dismissed Turuseta's appeal of the Court's denial of his section 2255 motion, on the grounds that this Court lacked jurisdiction to entertain the motion

1. Defense counsel waived opening argument, thereby leaving the alibi defense option open until after the government's case in chief.

2. On December 14, 1992, the Court had entered judgment of conviction and sentence, in accordance with the previously pronounced sentence.

while the direct appeal was pending. Subsequently, Turuseta moved for voluntary dismissal of his direct appeal, which resulted in the Eleventh Circuit's entry of dismissal of the appeal on February 3, 1994.

With the termination of the appellate proceedings, jurisdiction has returned to this Court. Pursuant to Turuseta's motion, to which the government did not object, the Court has entered an order treating Turuseta's previously filed section 2255 motion as filed anew and based on the entire record, including the previously developed evidentiary record. Having reviewed the matter, the Court finds no reason to deviate from its prior findings of fact and conclusions of law based on said record. Accordingly, the Court hereby restates and reconfirms its prior order denying Turuseta's motion to vacate sentence.

### FACTUAL FINDINGS

At the evidentiary hearing held by the Court on Turuseta's section 2255 motion, the Court received oral testimony from several persons who had been present at the Sunday, April 29, 1990 communion party.[3] The Court heard testimony from: Emilia Quarantotto (Turuseta's sister); Luis Ramirez (the communion party host and husband of Mirta Cajina, Sonia Turuseta's aunt);[4] Giovanni Oliva (the son of Mirta Cajina and a member of the Cajina–Ramirez household that hosted the communion party; also, Sonia Turuseta's cousin);[5] Gloria Oliva (Giovanni's wife); Nancy Sosa (Turuseta's other sister); and Francisco Garcia (the husband of another of Sonia's aunts). Three of these individuals— Luis Ramirez, Giovanni Oliva and Gloria Oliva—had been listed in the notices of alibi witnesses.[6] All three testified that they had first been interviewed by Turuseta's counsel on the starting day of trial, although Gloria Oliva stated that she had met the attorneys informally prior to that date. Giovanni Oliva and Luis Ramirez further testified that, prior to the interview, they had received "court

papers" concerning Turuseta's trial, but had only spoken to Turuseta regarding their willingness to testify.

The testimony consistently presented by alibi witnesses Ramirez, Mr. and Mrs. Oliva, and Garcia was: that the communion party had started in the afternoon and ended in the evening; that the Turusetas had been present at the communion party; and that Luis Turuseta did not leave the party, except possibly for a short time to buy beer. The Court found these witnesses credible and candid. The Court is also mindful of the fact that all of these witnesses are related, in varying degrees, to Turuseta's wife.

In addition, Emilia Quarantotto, one of Turuseta's sisters, testified that, immediately after Turuseta's arrest, she told his attorneys that Turuseta could not have committed the crime because he was at the communion party. She further testified that, after this initial encounter, she had no further contact with the attorneys. The Court did not find credible Quarantotto's testimony. Moreover, the Court does not find tenable her intended inference that the attorneys had paid no attention to her statement and had not bothered to prepare at all for an alibi defense.

■ Turuseta's other sister, Nancy Sosa, made a more credible witness. Nancy testified that, on the morning of the last day of trial, she accompanied her brother and sister-in-law to defense attorney Bartel's office. She added that, when Sonia and Luis Turuseta came out of a private conference with Bartel, Sonia and Luis told her that Bartel wanted to "change strategy," because presenting an alibi defense would be an "insult to the jury" and that they were going along because he was the lawyer. Nancy further testified that Sonia told her that Bartel wanted her to tell a "lie" when she took the stand. The Court finds this testimony credible. In the Court's opinion, Nancy Sosa does not appear capable of making up the terms "change strategy" and "insult to the jury." The Court recognizes, however, the hearsay

---

3. The party was held in honor of Irela Garcache, Sonia Turuseta's cousin.

4. Mirta Cajina is the mother of Irela Garcache, the communion girl.

5. Giovanni Oliva is Irela Garcache's half-brother.

6. Gloria Oliva was listed as an alibi witness under her maiden name, Gloria Vallasilo.

nature of this testimony, and, as such, finds it inadmissible.[7]

The Court also heard from the following government witnesses: Lenora Ann Gratano, a special agent with United States Customs; Stanley Bartel, Esq.; and Peter Heller, Esq. Gratano testified concerning her earlier interview of Luis Ramirez, conducted in the course of her investigation of this case. According to Gratano, Ramirez was not completely sure of Turuseta's presence at the communion party during her interview. The Court, however, does not find that Gratano's testimony impeached Ramirez's.

Stanley Bartel, Esq. testified concerning his preparation and conduct of the trial as lead counsel. According to Bartel, he was preparing a combined mistaken identity and/or alibi defense.[8] To this end, at various times over the two-year trial preparation period, he met at informal gatherings several persons who claimed that Turuseta was at the communion reception. He filed two notices of alibi. He also attempted to interview the alibi rebuttal witnesses that the government intended to call, but they were not cooperative. Coming to trial, Bartel declined opening statement because he did not feel that he had a strong alibi defense, and did not want to commit himself at that point. After the government presented the testimony of several witnesses placing Turuseta at the airport, he discussed the weakness of the alibi defense with Turuseta and obtained his consent to abandon it. Nevertheless, he wanted to introduce evidence of the party showing Turuseta to be "involved in very respectable familial functions," expecting that this evidence would give the jury the impression that Turuseta "was a person of good moral character and a family man." He introduced this evidence through Sonia. When asked why Sonia's testimony placed her husband at the airport during the critical hours surrounding the arrival of flight # 968, he stated, "Maybe her recollection was refreshed." Bartel denied that he had told

Sonia to change her testimony. Although the Court found some of Bartel's testimony incredible, the Court accepts the foregoing representations by Bartel.

The Court also heard from Peter Heller, Esq. The Court found his testimony not credible. The Court ascribes two reasons for the unreliability of Mr. Heller's testimony: (1) Mr. Heller lost his case file during Hurricane Andrew; and (2) Mr. Heller sat as second chair and probably relied a great deal, if not exclusively, on his co-counsel.

At the end of the second day of evidentiary hearings, and again at the close of the hearing, the Court posed what it saw as the conflicting alternatives presented by the evidence: either Sonia Turuseta testified truthfully at trial, with her husband's consent, regarding his departure from the communion party to go to the airport, and the alibi witnesses' testimony at the evidentiary hearing, although candid and credible, was the product of imperfect recollection; or, Sonia Turuseta lied at trial when she placed her husband at the scene of the crime within the critical time frame, and her husband concurred in this false testimony against him, thereby becoming a party to subornation of perjury. The Court finds the first alternative more plausible than the second one. Having accepted the first alternative, however, the Court has great difficulty understanding attorney Bartel's rationale, and Turuseta's concurrence, in calling Sonia Turuseta as a defense witness. Nevertheless, the Court finds that this decision was part of Bartel's less than brilliant trial strategy, to which Turuseta consented in an informed fashion.

### CONCLUSIONS OF LAW

#### I. Standard for Ineffective Assistance of Counsel

■ The sixth amendment of the United States Constitution guarantees a defendant's right to effective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 684–

---

7. The federal rules of evidence apply to section 2255 hearings. *Fed.R.Evid.* 1101(e). *See also Brady v. United States,* 404 F.2d 601, 602 (10th Cir.1968), *aff'd,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

8. The mistaken identity theory harked back to the initial arrest of Luis Tapia, whom the Court found to bear a striking resemblance to Luis Turuseta at the evidentiary hearing.

86, 104 S.Ct. 2052, 2062–64, 80 L.Ed.2d 674 (1984). Because ineffective assistance of counsel is a violation of the sixth amendment, Turuseta's claim is cognizable in the form of a section 2255 motion to vacate sentence.[9]

The Eleventh Circuit recently revisited the general standards announced by the United States Supreme Court in *Strickland* for judging ineffectiveness claims. *Atkins v. Singletary*, 965 F.2d 952, 958–59 (11th Cir. 1992). According to the Eleventh Circuit:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. When presenting ineffectiveness claims, petitioners bear the burden of showing, first, that counsels' performance was constitutionally deficient and, second, that this deficient performance prejudiced their defense.
>
> When reviewing whether counsel's performance was deficient, courts must, in a highly deferential manner, examine whether counsel's assistance was reasonable *considering all the circumstances*. This standard is no high standard. We must not determine what the ideal attorney might have done in a perfect world or even what the average attorney might have done on an average day; instead, our case-by-case inquiry focuses on whether a particular counsel's conduct was reasonably effective in context.
>
> Most important, we must avoid second-guessing counsel's performance. As is often said, "Nothing is so easy as to be wise after the event." We also should always presume strongly that counsel's performance was reasonable and adequate; and a petitioner alleging ineffectiveness bears

the burden of overcoming this strong presumption.

Even in the light of this permissive review of counsel's performance under *Strickland,* on rare occasions conduct may be found unreasonable. But unreasonable conduct will not warrant relief if the petitioner fails to prove affirmatively that the unreasonable conduct prejudiced his case. To establish prejudice, a petitioner proves nothing if he alleges only that the unreasonable conduct might have had some conceivable effect on the outcome of the proceeding. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*Id.* (citing *Strickland,* 466 U.S. at 686–694, 104 S.Ct. at 2063–68).

## II. Assigned Errors

Turuseta assigns three errors to his attorneys, claiming that all three prejudiced his defense: (1) they failed to effectively investigate and present an alibi defense; (2) they failed to zealously advocate Turuseta's case; and (3) they failed to move for suppression, prior to trial, of Turuseta's in-court identification by supervisor Smith. Under the two-prong analysis set out by the United States Supreme Court in *Strickland,* and amplified by the Eleventh Circuit in *Atkins,* the Court must make the following determinations as to each of these assigned errors:

*The performance prong:* Was Turuseta's counsels' performance reasonable considering all the circumstances?

*The prejudice prong:* Is there a reasonable probability that, but for counsels' unprofessional error, if any, the result of Turuseta's trial would have been different?[10]

---

**9.** Title 28, United States Code, Section 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed *in violation of the Constitution* or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence.
>
> A motion for such relief may be made at any time.

28 U.S.C.A. § 2255 (West 1971) (emphasis added).

**10.** A court must evaluate "all of the circumstances surrounding the attorney's performance during each discreet portion of the trial." *Horton v. Zant,* 941 F.2d 1449, 1461 (11th Cir.1991). This evaluation must be conducted "without regard to the attorney's performance at other points during the trial." *Id.*

### 1. Failure to effectively investigate and present an alibi defense.

■ Turuseta first claims that his attorneys rendered him ineffective assistance of counsel because they failed to properly investigate the alibi defense by waiting to interview potential alibi witnesses until the time of trial. Three of the witnesses who had been listed in the notices of alibi witnesses— Luis Ramirez, and Mr. and Mrs. Oliva— testified that they were first interviewed by Bartel and Heller on the starting day of trial. When viewed through the *Atkins* prism, however, this delay in interviewing the witnesses does not rise to the level of unreasonable performance. Turuseta's attorneys were familiar with the anticipated testimony concerning Turuseta's presence at the communion party, primarily through discussions with Turuseta, but also through informal meetings with potential witnesses. Although not "what the ideal attorney might have done in a perfect world or even what the average attorney might have done on an average day," the last minute interviews were "reasonably effective in context." *Atkins*, 965 F.2d at 958. Turuseta's attorneys were familiar with the alibi testimony, filed timely notices of alibi, and had the alibi witnesses ready to testify at trial. Therefore, Turuseta has failed to meet the first prong of the *Strickland* standard.

Moreover, the Court does not find the circumstances of this case similar to those in *Code v. Montgomery*, 799 F.2d 1481 (11th Cir.1986), or *Gomez v. Beto*, 462 F.2d 596 (5th Cir.1972). In *Code*, the Eleventh Circuit found insufficient assistance of counsel where the attorney did not follow up on alibi leads provided by the defendant's mother. *Code*, 799 F.2d at 1484–85. The Eleventh Circuit stated, "Counsel's anticipation of what a potential witness would say does not excuse the failure to find out." *Id.* at 1484 (quoting *United States v. Moore*, 554 F.2d 1086, 1093 (D.C.Cir.1976)). Unlike the *Code* attorney, Turuseta's counsel did not fail to find out what the alibi witnesses had to say. Although Bartel and Heller delayed formally interviewing the witnesses until the time of trial, they knew through Turuseta, rather than anticipated, what the alibi witnesses would say. This case is also different from *Gomez*, where defense counsel utterly failed to contact, much less subpoena, any of the alibi witnesses suggested by the defendant. *Gomez*, 462 F.2d at 597.

■ Assuming arguendo that Turuseta's attorneys' conduct was unreasonable, Turuseta does not meet the prejudice prong. Several eyewitnesses placed Turuseta at the airport around the time of flight # 768's arrival. More significantly, the jury heard from a co-worker Turuseta's admission of his involvement with the cocaine shipment. Even if presented, therefore, the alibi witnesses' testimony would not have directly refuted this admission. Therefore, the Court concludes that the jury's verdict would have remained the same even with the alibi testimony. *See United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir.1992) (Failure to present an alibi defense in a case where evidence of defendant's guilt was overwhelming did not prejudice the defense.); *Boschen v. United States*, 845 F.2d 921, 922 (11th Cir.1988) (Failure to investigate a good faith defense, even if true, was not sufficient under the *Strickland* standard in light of the overwhelming evidence against defendant.). Finally, Sonia Turuseta's testimony bore out the government's case, and, as noted before, Turuseta agreed to his wife's taking the stand, aware of what her testimony would be. Turuseta, therefore, cannot be heard to complain that the failure to present alibi witnesses who would have contradicted his wife, as well as the government's strong evidence against him, prejudiced his case.

■ In his post-hearing memorandum, Turuseta also claims that his counsel failed to properly investigate the possibility of misidentification by the government witnesses. The misidentification defense related to the arrest and release of Luis Tapia, whom the Court found to bear a striking resemblance to Luis Turuseta. Turuseta's attorney had contemplated the use of a misidentification defense in connection with the alibi defense at trial, but abandoned both. At the beginning of trial, in arguing his motion in limine seeking exclusion of Rule 404(b) evidence, Bartel stated to the Court, "The major issue in this case is identification of this defendant

as the one who was there ... We think they got the wrong man and that he was not the man who was the one who was there." These words belie Turuseta's claim that his attorneys had failed to investigate or be cognizant of the misidentification defense.

### 2. Failure to zealously advocate Turuseta's case.

■ Turuseta also claims that the defense presented by attorney Bartel, as well as his closing argument, constituted an abandonment of his duty of loyalty to Turuseta. As previously noted, the Court finds it difficult to understand Bartel's rationale for presenting Sonia Turuseta's testimony. The Court has also found, however, that the testimony was truthful and presented with Turuseta's consent. Therefore, Turuseta claim of lack of loyalty on the part of his counsel by presenting Sonia Turuseta's testimony lacks merit.

■ Turuseta also faults Bartel's closing argument. In closing, Bartel attempted to explain the government's rebuttal testimony that Turuseta had never been called to work by arguing that Turuseta had swapped hours with a fellow employee.[11] Bartel also argued that Turuseta did not know what was in the bag, and that the government had presented a case of "possession under questionable circumstances." Although these statements are not what the Court would expect from an "ideal" or even "average" attorney, they do not amount to unreasonable conduct within the context of a closing argument. More troubling is Bartel's statement that his client "may be guilty" or he "may be innocent," concluding, "And I will concede that much to the government's case or we wouldn't be here today." Again, the Court finds that Bartel's performance at trial fell far short of the ideal. Bartel, however, did not abandon his client at trial. Although poorly chosen, these few words, when viewed in the context of the whole trial, do not connote a "fundamental breakdown in the adversarial process," which leads to a presumption of preju-

dice in insufficient assistance of counsel claims. *Aldrich v. Wainwright,* 777 F.2d 630, 634 (11th Cir.1985). *See also Williams v. Weldon,* 826 F.2d 1018, 1023–24 (11th Cir. 1987) (A prosecutor's remarks during closing argument, although not a model of desired prosecutorial conduct, did not render entire trial fundamentally unfair.)

### 3. Failure to move for suppression, prior to trial, of Turuseta's in-court identification by ASI supervisor Smith.

■ As a third ground of counsel's ineffective assistance, Turuseta claims that his attorneys failed to move for suppression, prior to trial, of Turuseta's in-court identification by ASI supervisor Smith.[12] Even if the Court found this failure to be unreasonable conduct on the part of Turuseta's attorney's, the failure had no effect on the outcome of the trial. At trial, Bartel objected to the introduction of identification evidence. The Court overruled the objection, thereby indicating how it would have ruled on a motion to suppress. Moreover, during cross-examination, defense counsel vigorously questioned Smith regarding his identification of Turuseta. The jury, therefore, saw Smith's credibility challenged and chose to believe him. The Court concludes, therefore, that the result of the trial would not have been different even if the motion to suppress had been filed.

### CONCLUSION

Based on the foregoing considerations, it is hereby

ORDERED AND ADJUDGED that Defendant/Petitioner Luis Turuseta's motion to vacate sentence, pursuant to 28 U.S.C. § 2255, on the grounds of ineffective assistance of counsel is DENIED.

DONE AND ORDERED.

---

11. The Court sustained the government's objection that this argument was not supported by the evidence.

12. The Court notes that Turuseta did not reiterate this argument in his post-hearing memorandum.