SEYMOUR, Chief Judge,
dissenting.
The majority concludes Mr. Foster was not prejudiced by his counsel’s failure to investigate and present the testimony of a disinterested witness who would have corroborated Mr. Foster’s alibi defense. I cannot agree. Case law and common sense reject the notion, espoused by the majority, that such testimony may be dismissed as merely cumulative or because it would have added nothing to Mr. Foster’s defense.[1] To the contrary, courts have held under analogous fact situations that because such a disinterested witness might well have swayed the jury, the defense was prejudiced and the defendant deprived of a fundamentally fair trial. Because I am convinced that the same conclusion is required here, I respectfully dissent.
While the majority assumes without deciding that counsel’s failure here was constitutionally deficient, there can be little doubt that counsel’s performance fell far short of the mark. The missing witness, Ms. Cecille Fuller, was a clerk at Weddles grocery store who stated by affidavit that she remembered Mr. Foster’s visit to the store on the day of the crime and would have been willing to testify if asked to do so. Although she described events that are now ten years in the past, her statement is detailed and specific, and corroborates Mr. Foster’s trial testimony in virtually all relevant respects. Mr. Foster’s counsel knew or certainly should have known that his client would present an alibi defense at trial by testifying that he had been at Weddles at the time of the crime. In view of this knowledge and the fact that alibi was Mr. Foster’s only defense, counsel’s failure to interview potential witnesses on the matter can hardly be *1196 considered a tactical decision entitled to deference.
Indeed, “we have pointed out that in a capital case, counsel’s duty to investigate all reasonable lines of defense is strictly observed.” Williamson v. Ward, 110 F.3d 1508, 1514 (10th Cir.1997). Moreover, when counsel fails to investigate a defendant’s case for purposes of an alibi defense, habeas courts have routinely found the failure constitutionally deficient. See Brown, v. Myers, 137 F.3d 1154, 1156-57 (9th Cir.1998); Hadley v. Groose, 97 F.3d 1131, 1134-35 (8th Cir.1996); Griffin v. Warden, 970 F.2d 1355, 1358-59 (4th Cir.1992) (citing cases); United States v. Gray, 878 F.2d 702, 711 (3d Cir.1989); Montgomery v. Petersen, 846 F.2d 407, 414 (7th Cir.1988); Code v. Montgomery, 799 F.2d 1481, 1483 (11th Cir.1986); Nealy v. Cabana, 764 F.2d 1173, 1178-80 (5th Cir.1985). These courts have rested their decision on the common sense observation that “independent corroboration by a neutral, disinterested witness would perforce be extremely significant.” Montgomery, 846 F.2d at 414; see also Hadley, 97 F.3d at 1135 (given crucial nature of alibi witness, failure to investigate was deficient performance); Workman v. Tate, 957 F.2d 1339, 1345 (6th Cir.1992) (failure to investigate and interview promising witnesses is negligence rather than trial strategy). Accordingly, Mr. Foster has clearly met the requisite showing that his counsel’s conduct fell below an objective standard of reasonableness.
Despite the overwhelming case law recognizing the value of a corroborating disinterested alibi witness, the majority here nonetheless holds that Mr. Foster was not prejudiced by his counsel’s ineffective performance, characterizing the absent testimony as “cumulative” and “insuf-fieient”. The cases discussed below have pointedly rejected such arguments when made by the prosecution. I find their analysis compelling and their conclusion inescapable.
In articulating the appropriate test for assessing whether counsel’s deficient performance prejudiced a defendant’s defense, the Supreme Court has stated that “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court defined “reasonable probability” as “a probability sufficient to undermine confidence in the outcome.” Id. In so doing, the Court rejected an outcome-determinative standard as inappropriate and imposing too heavy a burden on defendants, pointing out that “[t]he result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.” Id. at 694, 104 S.Ct. 2052. Thus the question for our consideration is “whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.” Id. at 695, 104 S.Ct. 2052. The Supreme Court has defined “reasonable doubt” as “a doubt that would cause a reasonable person to hesitate to act.” Victor v. Nebraska, 511 U.S. 1, 20, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).
The trial here was in essence a swearing match between Mr. Foster and his wife.[2] Mrs. Foster testified that she saw Mr. Foster commit the crime and that he did so out of jealousy. Mr. Foster denied *1197 being present when the crime was committed and testified that he was instead at Weddles grocery store after being sent there by his wife.
In my view the majority is simply wrong in characterizing the circumstantial evidence against Mr. Foster as “strong.” Although the method by which the murder was committed and the state of the crime scene indicated that force was used, Mrs. Foster herself was not a small woman. The record shows that she was five feet six inches tall and admitted to weighing more than her husband. This evidence would have allowed the jury to find that she committed the crime herself.[3] Moreover, while the jury could also have concluded from the evidence that Mrs. Foster did not act alone, if Mr. Foster had established an alibi the jury could have believed that she acted together with someone other than her husband. The fact that Mrs. Foster’s testimony on the manner of the victim’s death was consistent with the rest of the prosecution’s evidence tends to prove only that she did the crime or saw it done, it says nothing about the identity of her accomplice, if any. Finally, Mr. Foster’s flight from the police in Fort Worth is hardly compelling evidence of his guilt. Mr. Foster, who was identified in elementary school as mentally retarded, see Application for Post Conviction Relief, attach. 4, testified that after he obeyed police orders to stand at the back of the car, the police drew a pistol on him. Mr. Foster said that because he did not know whether the police were going to shoot, he fell backward into a ditch and ran. He further testified that he was scared, and that because of his previous encounters with the Fort Worth police, they had a habit of stopping him. Thus, contrary to the majority’s assertion, the prejudice arising from the missing alibi witness must be assessed in light of the fact that the case rested virtually entirely on the credibility of Mrs. Foster, as the prosecutor admitted in closing.
The trial record contains testimony from neighbors of the Fosters who testified that the victim arrived at the Foster residence between 6:45 and 7:00 p.m. on the day of the crime, and that his vehicle was gone by 7:15 p.m. Ms. Fuller, the missing alibi witness, stated by affidavit that she remembered Mr. Foster as a regular customer and provided many specific details in support of her identification. She stated that he and a heavy-set black woman entered the store late in the afternoon and left when the store could not cash their welfare check. She stated the Mr. Foster returned to the store alone later that evening at between 6:00 and 7:00 p.m. She checked him out and remembered him buying diapers, lettuce, and tomatoes. She gave him an extra paper sack for his head because it was raining outside, and told him he could wait outside the store until the rain stopped. She stated that he was in the store approximately forty-five minutes and was picked up in front of the store by a vehicle later identified as belonging to the victim. Her statements support Mr. Foster’s trial testimony and, if believed by the jury, cast grave doubt on Mrs. Foster’s testimony that he committed the crime.[4] The trial evidence showed that the murder occurred between 6:45 and 7:15 p.m. Ms. Fuller’s testimony that *1198 Mr. Foster was picked up in the victim’s vehicle would have established that the murder occurred before Mr. Foster was picked up, and her testimony that he arrived at the store between 6:00 and 7:00 p.m. would have made it nearly impossible for him to have killed the victim at his home between 6:45 and 7:15 p.m.
Numerous cases addressing counsel’s failure to investigate and present testimony from a disinterested alibi witness under these circumstances have held that counsel was ineffective and that the defendant was prejudiced thereby. In Brown, 137 F.3d 1154, for example, the court pointed out that the missing alibi witnesses “would have altered significantly the evidentiary posture of the ease,” and that the defendant’s “own testimony would have appeared more credible because it coincided in important respects with those of his alibi witnesses.” Id. at 1157. The court emphasized that because testimony from an alibi witness which is consistent with that of the defendant would buttress the defendant on a crucial point, “it creates a reasonable probability that the fact-finder would have entertained a reasonable doubt concerning guilt.” Id. at 1158. The court further stated that “without any corroborating witnesses, [the defendant’s] bare testimony left him without any effective defense.” Id.
In Montgomery, 846 F.2d 407, the court considered a trial that, as here, boiled down to a swearing match between the-state’s witness incriminating the defendant and the defendant denying any involvement. As the court pointed out, “[t]he jury was presented with a straightforward credibility choice” in which “independent corroboration by a neutral, disinterested witness would perforce be extremely significant.” Id. at 414. The court held that when the testimony of a missing witness would have been exculpatory, it would be “significant to the petitioner’s defense in several respects.” Id. at 415. First, it contradicted the state’s chief witness and thus “had a direct bearing on this witness’ veracity, a witness upon whose testimony the state depended in order to secure a conviction.” Id. Even more important, the court said, the missing testimony would have provided the petitioner with an unbiased alibi defense. Id. “As such, it did not merely raise doubts about the petitioner’s guilt; if believed by the jury, it would have directly exonerated him of the crime.” Id. Accordingly, the court held that it is unrealistic to look at the missing witness testimony as “ ‘simply cumulative.’ ” Id.
In Code, 799 F.2d 1481, the court was presented with an attorney’s failure to investigate an alibi defense in a trial that was a swearing match, and concluded that the failure effectively deprived the defendant of any defense whatsoever. Id. at 1484. The court granted habeas relief, stating that it could not confidently say that “the case against [the petitioner] could have withstood the introduction of the alibi testimony readily discoverable at the time of trial and subsequently proffered in habeas corpus proceedings.” Id.
Likewise, in Nealy, 764 F.2d 1173, the court held that because the trial at issue was effectively a swearing match, “and because the missing testimony might have affected the jury’s appraisal of the truthfulness of the state’s witness and its evaluation of the relative credibility of the conflicting witnesses, [the petitioner] has stated a claim for ineffective assistance of counsel.” Id. 1174. In so doing, the court pointed out that the missing testimony would have supported the defendant’s credibility and diminished that of the state’s witness, and that credibility was of major importance because the state’s case could not be established if its witness was discredited. Id. at 1179.
Even in cases in which the trial involved evidence beyond a swearing match, courts regularly hold that counsel’s failure to discover and present a witness whose testimony would have bolstered the defense on a crucial point prejudiced the defendant’s right to a fair trial. See, e.g., Hadley, 97 F.3d at 1136 (failure to investigate and present alibi defense resulted in prejudice as defined in Strickland); Griffin, 970 *1199 F.2d at 1358-59 (counsel’s failure to present evidence of alibi witness to refute eyewitness identification undermined confidence in outcome of trial); Workman, 957 F.2d at 1346 (failure to procure testimony of witnesses who would have supported defendant’s version of events created reasonable probability that outcome would have been different); Grooms v. Solem, 923 F.2d 88, 90-91 (8th Cir.1991) (prejudice shown where missing alibi testimony would have supported alibi defense and raised reasonable doubt about veracity and credibility of state’s witness); Chambers v. Armontrout, 907 F.2d 825, 832 (8th Cir.1990) (failure to present disinterested witness who would have supported defendant’s claim of self-defense undermined confidence in outcome of trial); Gray, 878 F.2d at 712-14 (failure to present witness was prejudicial when evidence would have been significant on credibility issue and would have corroborated defense version of case); see also Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir.1990) (to affirmatively prove prejudice, a petitioner ordinarily must show that testimony of uncalled witness would have been favorable and that witness would have testified at trial).
As the majority recognizes, the assessment of prejudice is a fact-bound inquiry. See maj. op. at 1185 n. 1. Nonetheless, in support of its holding that counsel’s failure to present a disinterested alibi witness did not prejudice Mr. Foster’s defense, the majority cites three cases which are so factually distinguishable as to shed no light on the inquiry here. A detailed examination of these cases reveals that they concern circumstances far different from those before us.
The majority cites Lawrence v. Armontrout, 31 F.3d 662 (8th Cir.1994), for the proposition that prejudice is not always established whenever a missing witness would have testified to a fact that would be inconsistent with the defendant’s guilt. In so concluding, the court in Lawrence rejected the proposition that habeas relief is required “in such instances regardless of the strength of the evidence supporting the petitioner’s conviction.” Id. at 667. Significantly, the court made this statement, with which I have no quarrel, after the case had been remanded for an eviden-tiary hearing to determine whether the petitioner could show prejudice. Three of the witnesses who testified at that hearing offered testimony relevant to the petitioner’s alibi defense that either was not specific to the night in question, or provided no details of the evening, or did not rule out the possibility that the petitioner committed the crimes. Id. at 668. The court held that although this evidence might justify relief if the state’s case were relatively weak, the evidence of guilt was substantial. The court noted that three different witnesses identified the petitioner as being at the scene of the crime, one of whom saw him from only five feet away and another of whom memorized the license number of the car used in the crime that was later traced to the petitioner’s mother. In the case before us, of course, the state presented no such evidence from disinterested witnesses.
The majority also cites Kubat v. Thieret, 867 F.2d 351 (7th Cir.1989). In that case, the court found no prejudice from counsel’s failure to present three alibi witnesses because the prosecution presented significant evidence to corroborate its accomplice witness. As in Lawrence, the court’s holding was made after an eviden-tiary hearing, in which three witnesses not called at trial testified' on behalf of the petitioner. The Seventh Circuit held that counsel had not been ineffective in failing to call two of the witnesses, and that the lack of the third witness, who was not strictly speaking an alibi witness, did not prejudice the petitioner. In so doing, the court weighed the testimony of this witness against that of five eyewitnesses who identified the petitioner as accompanying the confessed accomplice, one of whom had carried on a half-hour conversation with the petitioner, as well as numerous other witnesses who provided corroborating details. Id. at 362.
*1200 Finally, the majority cites another Seventh Circuit case, United States ex rel. Kleba v. McGinnis, 796 F.2d 947 (7th Cir.1986), in which the court held that no prejudice arose from a missing alibi witness where the defendant would have had ample time to commit the crime if he had left the witness’ apartment ten minutes earlier than she stated in her affidavit. The defendant was convicted of attempted rape and robbery. Over a dissent, the court concluded that the defendant was not prejudiced by the lack of the alibi witness, relying on testimony from police officers that they observed the attack, pursued the attacker, apprehended the defendant without ever losing sight of him, and found the victim’s watch in his pocket after his arrest. Id. at 956-57.
The result reached by the Seventh Circuit in both Kubat and Kleba is to be contrasted with the result it reached in Montgomery, 846 F.2d 407, discussed above, in which the court held that when the trial consists of a swearing match between the defendant and the state’s witness, the failure to present a disinterested alibi witness prejudiced the defense. In fact, none of the cases relied on by the majority presented the scenario before us, a credibility contest between two witnesses in which the state’s circumstantial evidence is slim. Here, as in the cases I discuss and which the majority does not address, the trial was a swearing match between two people, Mr. Foster and his wife. Indeed, in its closing argument the state prosecutor described Mr. Foster and his wife as the two most important witnesses, characterized Mr. Foster’s testimony as “totally unbelievable,” trial trans. at 537, and rested its case on the believability of Mrs. Foster, id. at 552, stating that if the jury had any doubts about who was telling the truth it should acquit, id.
I have discovered no case and the majority has cited none in which a court under these circumstances found no prejudice in the failure to present testimony from a disinterested corroborating alibi witness. The majority stands alone in this regard and in so doing does not even address the factually indistinguishable cases to the contrary. On the facts of this case and in light of the treatment other circuits have given in closely analogous circumstances, I do not see how we can hold that Mr. Foster has shown no prejudice because the missing witness’ testimony would have been cumulative or would have had no impact on the jury’s credibility determination. To the contrary, such testimony buttresses the credibility of the defendant and undermines that of the state’s witness. It is in fact the cumulative nature of such testimony that makes it valuable and its lack prejudicial. I cannot square the majority’s resolution of this issue with the many cases unanimously contrary to its position, or with the Supreme Court’s admonition that “ ‘[o]ur duty to search for constitutional error with painstaking care is never more exacting than it is in a capital case.’ ” Williamson, 110 F.3d at 1514 (quoting Burger v. Kemp, 483 U.S. 776, 785, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987)).
In my view, Mr. Foster is entitled to habeas corpus relief on his effective assistance of counsel claim. At the very minimum, the case should be remanded to the district court for an evidentiary hearing to further develop this issue. See Laiorence, 900 F.2d at 131 (remand “to hold an evidentiary hearing to determine whether trial counsel’s failure to investigate and call alibi witnesses prejudiced [petitioner’s] defense.”)
I respectfully dissent.[5]

. I find it odd the majority would state that case law and common sense are not relevant in deciding whether Mr. Foster is entitled to habeas relief. See maj. op. at 11 n. 1. An assessment of prejudice that cannot withstand the scrutiny of case law and common sense loses its claim to objective legitimacy and is open to challenge as arbitrary.

. One of Mr. Foster’s former cell mates, Mr. Jody Lynch, testified only at the sentencing stage of the trial that Mr. Foster had admitted killing Mr. Wiley. Because this evidence was not presented at the guilt phase of the trial, it cannot be a factor in assessing the prejudice prong of the Strickland, inquiry. Mr. Lynch apparently made a practice of trading his testimony for lenient treatment since the sentencing record indicates he was also testifying in yet another proceeding about another jailhouse confession he allegedly happened to overhear. The doubtful value of this testimony is underscored by the fact that the state chose not to present it at the guilt stage.

. A note in Mrs. Foster's handwriting was discovered on the door ol the house the day after the crime saying that the couple would be back soon.

. Although the majority asserts Ms. Fuller’s testimony would be subject to "intense cross-examination” on the ground that it concerned events ten years before, had defense counsel properly investigated and presented the alibi testimony of Ms. Fuller at the trial in November 1983, she would have been describing events that occurred in April 1983, only seven months earlier. Ms. Fuller’s recollections, even at this late date, are remarkably specific. Moreover, the fact that her testimony would be subject to challenge on retrial on the basis of its age is utterly irrelevant to assessing whether Mr. Foster was prejudiced by her failure to testify in 1983. Because there was no evidentiary hearing on the issue of prejudice, no court has assessed either Ms. Fuller’s recollection or her credibility.

. Because the basis of my dissent is my belief that Mr. Foster is entitled to habeas relief on his Sixth Amendment claim, I do not need to address the majority’s treatment of the other issues raised by Mr. Foster on appeal.