Rodney George MILLER, Petitioner,

v.

Harry K. SINGLETARY,
Jr., etc., Respondent.

No. 92–296–CIV–T–17.

United States District Court,
M.D. Florida.

March 10, 1997.

Matthew Hart Perry, James F.E. Carbia, Federal Public Defender's Office, Middle District of Florida, Tampa, FL, for Petitioner.

David Robert Gemmer, Wilkes & McHugh, Tampa, FL, for Respondents.

## ORDER REGARDING REPORT AND RECOMMENDATION

KOVACHEVICH, Chief Judge.

This cause is before the Court on report and recommendation (hereafter "R & R") issued by Magistrate Judge Thomas B. McCoun, III, on October 7, 1996 (Docket No. 37). The magistrate judge recommends that the petition for writ of habeas corpus be granted and the respondent be ordered to provide a new trial for the Petitioner or release him from custody.

Pursuant to Rule 6.02, Rules of the United Slates District Court for the Middle District of Florida, the parties had ten (10) days after notice to file written objections to the proposed findings and recommendations, or be barred from attacking the factual findings on appeal. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982) (en banc). The respondent filed objections to the R & R on October 17, 1996 (Docket No. 38) and the petitioner filed a response to the objections on October 24, 1996 (Docket No. 39).

The petition for writ of habeas corpus, filed March 9, 1992, contained four (4) claims for relief: 1) violation of Sixth Amendment right to confrontation of witnesses; 2) violation of Fifth and Fourteenth Amendment right to discovery; 3) violation of due process in giving of jury instructions; and 4) ineffective assistance of counsel. In the R & R, the magistrate judge found that Counts I and III of the petition were procedurally barred. Further, the report found that Count II did not raise a constitutional issue and, therefore, was not cognizable under 28 U.S.C. § 2254. Neither party filed objections to the magistrate judge's R & R in regard to these conclusions. After review of the case, this Court agrees with the R & R as to these counts.

This leaves the fourth count, ineffective assistance of counsel, for consideration by this Court. The Magistrate Judge found that Petitioner had received ineffective assistance of counsel. After reviewing the R & R findings in light of Petitioner's objections, this court adopts the Magistrate Judge's Report and Recommendation.

### I.  Standard of Review

The District Court shall review de novo any portions of the report concerning specific proposed findings or recommendations to which objection is made. 28 U.S.C. 636(b)(1). *See Gropp v. United Airlines, Inc.,* 817 F.Supp. 1558 (M.D.Fla.1993). When no objection is made, the District Judge may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings and recommendations. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir.1982). This Court has adopted a clearly erroneous standard of review for findings which are not challenged. *Gropp,* 817 F.Supp. at 1562.

### II.  Background

On July 29, 1988, a nine-year-old girl, Tanesha Roney, told her mother, Marion Roney, that her mother's live-in boyfriend, Rodney Miller, had touched her inappropriately. She repeated the statement to her mother's cousin. On the following evening, Marion Roney reported the suspected sexual abuse to the Department of Health and Rehabilitative Services. An HRS worker, Maxine Myers, investigated, and Tanesha repeated the allegations to Myers. On August 4, 1988, Tanesha was examined by a doctor who determined that her hymenal tissue was missing and her vagina was dilated more than normal for a child of her age.

On October 24, 1988, in the Circuit Court for the Tenth Judicial Circuit of the State of Florida, Polk County, Rodney Miller was charged with three (3) counts of capital sexual battery on a child under 12, one count each for acts between August and December 1987, between January and July, 1988, and on July 28, 1988.

A public defender was appointed to represent Petitioner. The case eventually came to Public Defender Robert Norgard. Norgard also represented a juvenile named Lamont Keith Edwards. During the time that he represented Petitioner, Norgard realized that there might be a conflict of interest between his representation of Edwards and his representation of Petitioner. Norgard received information that Edwards had told his aunt, Stella Powell, and her friend, Gloria Patterson, that he and other boys that he knew had had sexual intercourse with Tanesha Roney. When this information was investigated, Edwards admitted to an investigator from the public defender's office that he had had sexual intercourse with Tanesha Roney.

As this created a conflict of interest, the public defender's office withdrew from the case, and attorney Jeff Holmes was appointed to represent Petitioner on July 26, 1989. Because of his representation of Edwards, Norgard did not give Holmes the confidential information he had received from Edwards. However, Edwards' name was on a list of potential witnesses included in the public defender's file that Holmes received. Both Ms. Powell and Petitioner may also have made Holmes aware of the alleged sexual activity.

At a pretrial hearing on the defendant's motion to redepose Tanesha Roney as to her prior sexual conduct, held on September 29, 1989, Holmes told the court that:

Subsequent to my taking the case I have received some information, which I believe is quite believable, indicating that this young girl had indeed had sex with a certain individual during the time frame that my client allegedly was having some kind of sexual contact with her. . . . [I]f, indeed, this is accurate . . . that will negate much of the physical evidence in this case.

And I think it will put serious doubt on the veracity of Miss Roney. (R. at 30).

At that point, Holmes had not made any investigation into Edwards or his whereabouts. The court denied the motion without prejudice, stating that more investigation was necessary before Tanesha Roney could be redeposed, but that if the alleged sexual partner was not available, he might reconsider. Holmes said at that point that "I need to make an effort to find this guy. That's what I'm going to do right now."

On about October 16, 1989, Holmes had a subpoena prepared for Edwards. The process server was unable to deliver the subpoena, and returned it to Edwards on November 2, 1989. Holmes made no further effort to find Edwards.

Petitioner's trial began on November 6, 1989. During a motion in limine prior to the trial, there was discussion of the fact that Holmes had not been able to serve the young man who was alleged to have had sexual intercourse with Tanesha Roney. Holmes told the court that he was not able to have Edwards "present to testify because he is on juvenile probation." Holmes did not tell the court of any efforts he had made to locate Edwards or that there was a bench warrant out for Edwards. The court would not allow Holmes to cross-examine the victim about her prior sexual activity; however, the court offered to allow Holmes to proffer the testimony. Holmes, however, failed to make the proffer.

The state called Tanesha Roney, who testified that the defendant had inserted his finger in her vagina. The prosecutor asked her, "Has anybody else before or after ever touched you in your private parts?" She responded, "No." The doctor who had examined her testified that Tanesha Roney was missing her hymen and that her vagina was dilated more than was normal for a child her age. The state also called several people to whom Tanesha had told her story, including Marion Roney, and the HRS worker. The defense called Petitioner, who denied the allegations that he had touched Tanesha Roney in a sexual manner. The defense also called a number of character witnesses.

The jury came back with a verdict finding the defendant guilty on all counts. Petitioner was sentenced to life in prison, with a minimum mandatory sentence of twenty five years on each count, to run concurrently. The Second District Court of Appeal affirmed the judgments and sentences. *See Miller v. State*, 569 So.2d 1379 (Fla. 2nd Dist. Ct.App.1990). On April 29, 1991, Petitioner

filed a motion for Post–Conviction Relief pursuant to Rule 3.850, Fla.R.Crim.P. The trial court denied the motion on July 29, 1991.

Petitioner filed a petition for a writ of habeas corpus on March 9, 1992. The case was referred to Magistrate Thomas McCoun, III. Judge McCoun held an evidentiary hearing on September 22, 1994. At that time, another evidentiary hearing was set to allow the deposition of Lamont Edwards to be taken. Edwards' deposition was taken on January 18, 1995, and the second evidentiary hearing was held on January 26, 1995. Magistrate Judge McCoun issued a Report & Recommendation on October 7, 1996.

### III. Discussion

The respondent has filed timely objections to the Magistrates Judge's finding with regard to Petitioner's claim of ineffective assistance of counsel. Respondent objects to the finding that Petitioner's counsel was ineffective because he did not make more of an effort to locate Lamont Edwards. Respondent claims that the Magistrate Judge's findings are incorrect because:

(1) they do not take account of the time line involved;

(2) there is no evidence that Edwards was available at the time of the trial;

(3) it is unlikely that Edwards would have testified;

(4) Edwards' testimony would have been irrelevant;

(5) Edwards' testimony would not have been admissible under Florida's Rape Shield Statute;

(6) Edwards' hearsay statements to Stella Powell were not admissible as statements against interest.

The Court has reviewed each objection, along with the Magistrate Judge's findings.

In *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984), the Court stated that ineffective assistance of counsel claims fall into two (2) categories. The first category involves claims that the government violated the defendant's right to effective counsel by impermissibly interfering with counsel's ability to make important decisions about how to conduct the defense. *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063–64. In the second category are claims that the defendant was deprived of his right to the effective assistance of counsel because his counsel, whether retained or appointed, simply failed to provide adequate legal assistance. Claims in the second category are "actual ineffectiveness claims." *Id.* Petitioner raises the second type of claim before this Court. Petitioner claims that his counsel's failure to investigate and call Lamont Edwards to explain the doctor's findings and impeach Tanesha Roney's credibility made his counsel ineffective.

The Supreme Court has established a two-pronged test for evaluating actual ineffectiveness claims. Under the first prong, a reviewing court must determine whether counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Under the second prong, the court must determine whether counsel's performance, if deficient, prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. In order to sustain an "actual ineffectiveness" claim, the defendant must prevail on both the performance and prejudice prongs.

### A. Holmes' Performance

Under *Strickland* guidelines for reviewing performance, the convicted defendant must identify the specific acts or omissions the defendant alleges were not the result of reasonable professional judgement on the part of his counsel. The court must the decide whether, "in light of all the circumstances" facing trial counsel, his or her conduct fell "outside the wide range of professionally competent assistance." *Id.* at 690, 104 S.Ct. at 2066. Counsel "is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Id.* Therefore, Petitioner bears the burden of showing, first, that counsel's performance was constitutionally deficient and, second, that the deficient performance was prejudicial.

Petitioner claims that his trial counsel failed to investigate a key defense witness,

Lamont Edwards, and that this failure to investigate was unreasonable. The Sixth Amendment guarantees a criminal defendant the right to effective, not errorless, counsel. *Young v. Zant,* 677 F.2d 792, 798 (11th Cir. 1982); *Mylar v. Alabama,* 671 F.2d 1299, 1300 (11th Cir.1982). It does, however, require that counsel's conduct fall within the range of competency generally demanded of attorneys in criminal cases. *McMann v. Richardson,* 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).

The Court in *Strickland* declined to outline specific requirements for effective assistance of counsel, stating only that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. In order to apply this standard, "the court must inquire into the actual performance of defense counsel and determine whether representation was reasonably effective based on the totality of the circumstances in the entire record." *Washington v. Watkins,* 655 F.2d 1346, 1355 (5th Cir.1981); *accord Goodwin v. Balkcom,* 684 F.2d 794, 804 (11th Cir.1982) *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983).

■ Determining the reasonableness of Holmes' decision not to take any steps further than one attempt to serve process on Edwards requires consideration of the complexity of Petitioner's case and the strategy of his trial. *See Code v. Montgomery,* 799 F.2d 1481, 1483 (11th Cir.1986). Although the charges were serious ones, Petitioner's case was a fairly simple one with only one strategy: to deny that Petitioner had touched Tanesha Roney. The case came down to what Petitioner's original counsel described as a "swearing contest." The evidence against Petitioner was the testimony of Tanesha Roney and those to whom she had told her allegations, along with the medical testimony as to the condition of Tanesha Roney's vagina. The evidence in Petitioner's favor was only his word and a few character witnesses.

The evidence indicates that Holmes was aware that Lamont Edwards might have had intercourse with Tanesha Roney. He told the trial judge that he had "information ... indicating that this young girl had indeed had sex with a certain individual during the time frame that [Petitioner] allegedly was having some kind of sexual contact with her." It is clear from the transcript of the oral motion in limine made by the prosecutor just prior to trial that the "individual" he referred to was Lamont Edwards. Holmes listed Edwards as a potential witness, and in his own pretrial notes had a notation next to Edwards' name saying "the culprit." Furthermore, Holmes also understood the importance of Edwards' testimony to the case. He told that trial judge that the testimony would "negate much of the physical evidence in this case. And ... put serious doubt on the veracity of Miss Roney."

In order to find Edwards, Holmes attempted to have him served with a subpoena. He made no further effort than that. Michael Cosenza, an investigator for the Federal Public Defender's Office for the Middle District of Florida, formerly an investigator for the State Public Defender's Office for the Middle District of Tampa, testified at the September 22, 1994, evidentiary hearing. Cosenza testified that the:

> simplest way to do it if you knew where he lived and it was public housing, and go right down to the office and find out who was on the contract, who the dependents living in the house are, what were there names, ages, dates of birth. I'd take it from there and subpoena the school records if we had to subpoena the school records. Get enough ID information on Mr. Edwards and that's all available, that's all standard, nothing's changed over the years since 1989, and go forward.

The witness testified further that "within a very short period of time, especially if you just went out to Haines City to Parkview Village, it's a very tight knit neighborhood, it would be very—you would quickly locate the gentleman."

Holmes neither made any attempt to go to find Edwards himself nor requested that an investigator be appointed by the court to try and locate Edwards. Upon being asked what he had done to find Edwards beyond hiring a process server, Holmes testified at

the evidentiary hearing that, "I did not go to Haines City or hire an investigator at the state's cost or make a motion to the court to authorize an investigator to go look for this person who was on the lam."

Considering the importance of Edwards' testimony to his client's case and the gravity of the charges against Petitioner, the failure to make any further efforts to locate Edwards was not reasonable, and therefore was sufficient to constitute ineffective assistance of counsel. *See Code,* 799 F.2d at 1483–84 (holding that the failure of counsel to investigate potential alibi witnesses when defendant relied on alibi defense was ineffective assistance of counsel); *Nealy v. Cabana,* 764 F.2d 1173 (5th Cir.1985) (holding that when case came down to "swearing match," trial counsel who did no more to investigate potential alibi witness than call and leave messages for her had not given effective assistance).

### B. Prejudice

In order to show ineffective assistance of counsel, the petitioner must show not only that counsel's conduct did not meet the reasonableness standard, but also that the errors prejudiced the petitioner's case. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The petitioner need not show that counsel's conduct more likely than not affected the outcome of the case; petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. In determining whether, "absent the errors, the factfinder would have had a reasonable doubt respecting guilt," the court must consider all of the evidence that was before the factfinder. *Id.* at 695, 104 S.Ct. at 2068. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*

Edwards' testimony that he had had intercourse with Tanesha Roney would have been admissible to explain the doctor's testimony that her hymen was disturbed and her vagina dilated. *See McGriff v. State,* 601 So.2d 1320 (Fla. 2nd Dist. Ct.App.1992); *Skipper v. State,* 537 So.2d 1138, 1139 (Fla. 5th Dist.

Ct.App.1989); *Sadler v. State,* 509 So.2d 1139 (Fla. 5th Dist. Ct.App.1987); *Deel v. State,* 481 So.2d 15 (Fla. 5th Dist. Ct.App.1985). Those findings were made at the medical examination Tanesha Roney had on August 4, 1988. To be relevant for the purpose of explaining the condition of Tanesha Roney's vagina, any sexual activity between Edwards and Tanesha Roney would have had to occurred before August 4, 1988.

It is not clear from Edwards' 1995 deposition exactly when he might have had sex with Tanesha Roney. He testified that he had sexual intercourse with her four or five times, and that he knew of others who had had sexual intercourse with her. However, during the deposition in 1995, he was unable to remember exactly when the alleged sexual encounters occurred, only that it was before he learned about the charges against Petitioner in 1989. However, a public defender investigator .spoke to Edwards on July 29, 1989, and that report, made closer to the time of the incidents, is more clear. At that time, Edwards said that he had known Tanesha Roney "a couple of years ago" when he lived at Parkview Village, and that he had had sex with her three or four times at her house. Later notes in the same report indicate that he moved away from Parkview Village in February or March 1989, and that the incidents occurred during the summer of 1987. This is well before the time of the medical examination. Therefore, Edwards' testimony would have been admissible.

■ The evidence presented at Petitioner's trial was not overwhelming: the evidence essentially came down to the word of Petitioner against the word of Tanesha Roney and the medical testimony about Tanesha Roney. The other state witnesses could testify only that Tanesha had told them the essentially the same things as she testified to at trial. The testimony of Lamont Edwards would have been admissible, would have explained the medical findings, and would also have cast doubt on the credibility of Tanesha Roney, who testified at trial that no one other that Petitioner had ever touched her vagina. In a case that was fairly weak to begin with, such countervailing evidence is enough to raise a reasonable proba-

bility that the outcome of the case would have been different were it not for counsel's errors.

It is possible, as Respondent speculates, that Edwards would have chosen not to testify, or that Holmes would not have been able to find him even with greater effort. However, the petitioner is not required to show that it is more likely than not the errors affected the outcome. *See Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. He is required only to show that "there is a reasonable probability" that without the errors, the outcome would have been different. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The failure of Petitioner's counsel to make reasonable efforts to find a witness that could have been critical to his defense is sufficient to undermine confidence in the outcome of Petitioner's case.

The Court has reviewed the report and recommendation as promulgated by the magistrate judge, as well as independently reviewing the file. The Court concurs with the recommendation made by the Magistrate Judge. Accordingly, it is

**ORDERED** that the objections of respondent be **overruled**; the report and recommendation, dated January 9, 1997, be **adopted** and incorporated by reference herein; Counts I, II, and III be **denied**, for the reasons stated above; the petition for habeas corpus be **granted**, for the reasons stated above; and that the writ shall issue commanding Respondent, Harry K. Singletary to release Petitioner from his custody unless within sixty (60) days of the final Order of this Court, he receives a new trial.

## REPORT AND RECOMMENDATION

McCOUN, United States Magistrate Judge.

THIS CAUSE comes on for consideration of a Petition for Writ of Habeas Corpus filed

by a state prisoner pursuant to Title, 28, United States Code, Section 2254.[1]

Petitioner challenges his conviction and sentence for three counts of Sexual Battery on a child under the age of twelve arising from a jury trial in Polk County, Florida. Petitioner is serving a life sentence with a minimum mandatory twenty-five year sentence on each count.

This Petition raises four grounds for relief,

1) that Petitioner's Sixth Amendment right to confront witnesses was violated when the trial court limited Petitioner's cross-examination of a key state witness;

2) that Petitioner's right to discovery under the Fifth and Fourteenth Amendment was violated when the trial court denied Petitioner's motion to re-depose the state's key witness;

3) that the trial court erred in not giving instructions to the jury upon request for all lesser-included offenses and lewd assault where the evidence supported such instructions, violating Petitioner's right to due process; and

4) that trial counsel was ineffective in failing to investigate and call a witness who would substantially impeach the victim's testimony.

### I.

■■■ This Petition does not raise any issues of exhaustion of state court remedies. Claims one and two, above, were raised by the Petitioner on his direct appeal to the Florida Court of Appeal. Claims three and four were raised by way of Petitioner's Motion to Vacate pursuant to Fla. R.Crim. P. 3.850. Claim three is clearly procedurally barred due to Petitioner's failure to raise the issue before the trial court and on direct appeal.[2] It is suggested that the Petitioner is also procedurally barred in proceeding with claims one and two. Initially, the court would observe that Petitioner's second claim regarding the right of discovery does not

---

1. This matter has been referred to the undersigned by the District Judge for consideration and a Report and Recommendation. See Local Rules 6.01(b) and 6.01(c), M.D., Fla.

2. Contrary to the statement of the trial court in the Order denying post-conviction relief, this issue was not raised on direct appeal. It is nonetheless barred, as no cause for default is shown. *Tower v. Phillips,* 7 F.3d 206 (11th Cir.1993).

state a constitutional claim. Neither the Fifth nor the Fourteenth Amendment guarantees a criminal defendant the right of discovery. This is purely a matter of state law and is not cognizable pursuant to 28 U.S.C. § 2254. *Carrizales v. Wainwright,* 699 F.2d 1053, 1054 (11th Cir.1983). Petitioner's first claim does state a constitutional claim. However, a review of the record reveals that counsel never perfected this issue during the trial. The court offered to allow counsel for the Petitioner to make a proffer in support of this claim and counsel failed to do so. Although the issue was argued or appealed, the state argued a waiver of the issue. While this issue has merit, it was not properly pursued by trial counsel and the Florida Court of Appeal had no alternative but to deny this claim. Petitioner is barred from raising the issue here as well. *Tower, supra.*

The matter of ineffective assistance of trial counsel as alleged in claim four is properly preserved and before the court. After appointment of counsel, this court granted an evidentiary hearing on this issue. The hearing was conducted over two days on September 22, 1994 and January 26, 1995. In the interim, counsel travelled to Elmore, Alabama for the conduct of a deposition of one, Lamont Keith Edwards. By agreement of the parties, the court has accepted the deposition of Lamont Keith Edwards as part of the record in the second hearing.

## II.

Robert Norgard, an assistant public defender in Polk County, Florida, testified that Jeffrey Foster, Esquire was the initial assistant public defender appointed to represent the Petitioner at trial. Sometime during the public defender's representation of the Petitioner, Mr. Norgard took over the case. He describes the case as a "swearing contest," one in which the accused denied the charges and the victim claimed he was guilty. In addition to the testimony of the victim, the state had testimony from a medical expert concerning a physical examination of the victim which purported to reveal that the victim had no hymenal tissue and had a somewhat dilated vagina. This physical evidence was consistent with penetration of the vagina. In Mr. Norgard's mind, the physical evidence was extremely important to the prosecution of the Petitioner's case because it supported the alleged victim's story and suggested prior sexual activity.

During Mr. Norgard's representation of the Petitioner, it came to his attention that one Lamont Keith Edwards may have had sexual relations with the victim. According to his information, Lamont Keith Edwards had made statements in front of a Stella Powell and a Gloria Patterson confirming that he had sexual relations with the victim. Mr. Norgard initiated an investigation of Mr. Edwards. According to documents within the public defender's file, Mr. Edwards acknowledged having sexual relations with the victim. At the time Mr. Norgard was investigating the case, Mr. Edwards was being prosecuted in juvenile court and was also represented by the public defender's office. When it became apparent that a conflict of interest existed, the public defender's office moved to withdraw. This lead to the appointment of Jeff Holmes on July 26, 1989.

Mr. Norgard observed that in light of the medical evidence which indicated that there had been penetration of the young victim's vagina, it was imperative to find some explanation to contradict the victim's assertion that there had been sexual activity with the Petitioner. Given that there were no witnesses to the alleged events, the physical evidence was obviously of great significance. In Mr. Norgard's view, it was highly important to develop evidence that the victim had sexual activity with another so as both to explain the physical evidence and to impeach the victim's credibility.

Mr. Norgard did not reveal his conversations with Mr. Edwards to the new attorney. Mr. Norgard did advise Mr. Holmes that there was another individual that counsel needed to look into, but he did not specifically identify Mr. Edwards for fear of violating the attorney/client privilege. Mr. Norgard's records do reveal that new trial counsel would have examined the public defender's files and all non-privilege matters within the file would have been available to new counsel. Mr. Edwards' name was clearly identified within the file.

The court also took testimony from Stella Powell and Gloria Patterson. Ms. Powell, during the relevant time frame, was the girlfriend of Petitioner and Lamont Keith Edwards was her nephew. She was employed as a resource person in the Parkview Daycare Center. She testified to having conversations with Lamont Keith Edwards who indicated that the victim was not a virgin and that a lot of the boys, including himself, had been "going with her," i.e. having sex with her. Ms. Powell indicated that she turned this information over to the public defender's office. Additionally, she indicated she advised new counsel, Mr. Holmes of this fact. According to her, she told Mr. Holmes that the victim was not a virgin and that there were a lot of boys around her house and she advised him that Lamont Keith Edwards had been one of the boys having sex with the victim.

Ms. Gloria Patterson was a friend of Ms. Powell's and a fellow employee at Parkview Daycare Center. She confirmed the testimony of Ms. Powell that Lamont Keith Edwards had indicated he had sexual relations with the victim, along with other young boys within the neighborhood. Ms. Patterson also confirmed that from her firsthand observation, there was always a lot of young boys hanging around the victim's house.

Trial counsel, Mr. Holmes, testified that sometime after his appointment, he did have occasion to speak with Mr. Norgard who indicated that there was significant information that he needed to look into, but which he could not reveal. According to Mr. Holmes' time records, in August, 1989, he spoke with Stella Powell. Mr. Holmes denies that Ms. Powell revealed specific information regarding a conversation with Lamont Keith Edwards. He does acknowledge that he spoke with Ms. Powell, who indicated that there was some "intrigue" existing between Lamont Keith Edwards and the victim. His records also reveal that on or about September 18, 1989, he would have reviewed the public defender's file. He gives no explanation for the delay between his appointment on July 26th and this date before reviewing the file. He believes he first heard the name Lamont Keith Edwards on September 27,

1989, when he received the name from a public defender employee. According to Mr. Holmes, he relied chiefly upon Ms. Powell to locate Lamont Keith Edwards.

Counsel acknowledges that he did not go out and attempt to find Mr. Edwards and he made no effort to hire a private investigator to locate him. In about October, 1989, shortly before trial, he listed Mr. Edwards as a witness and he did attempt to subpoena him, but the subpoena was returned by a process server on November 2, 1989 with a notation that the subject had moved and left no forwarding address.

Mr. Holmes acknowledges that testimony from Lamont Keith Edwards that he had engaged in sexual activity with the victim was significant in light of the physical evidence relied upon by the prosecutors. Such evidence would have impeached the victim's credibility as to her testimony that she had not previously been touched in her vagina by anyone else.

It appears that beyond speaking with Ms. Powell and imploring her to locate Lamont Keith Edwards and on one occasion attempting to serve a subpoena on Mr. Edwards, trial counsel made no effort, either personally or through anyone else, to locate this witness. Trial counsel evidences an unusually cavalier attitude that such a search would have made little difference since, according to him, Mr. Edwards was "on the lam" from his pending juvenile matter.

The trial record reflects that counsel made no attempt to obtain funds to hire an investigator to pursue this witness or to otherwise pursue the information regarding the sexual activity of the victim. Counsel did make a passing attempt to serve a subpoena on the individual, but went no further. At the very outset of the trial, counsel was confronted by an oral motion in limine to limit certain areas of his inquiry. The colloquy between counsel and the trial judge establishes that counsel recognized the significance of Mr. Edwards' testimony, but it also establishes that he had developed no evidentiary basis to allow the introduction of such testimony. Although counsel had initially indicated an intention to cross-examine the victim with regard to prior sexual activity, the court precluded him from

doing so. The trial judge offered counsel the opportunity to make a proffer of this evidence during trial, however, trial counsel never followed up on the proffer. A review of the transcript reveals that trial counsel was inadequately prepared to argue either the legal or the factual basis for the admission of such evidence. Not only had his lack of investigation left him without a factual predicate, counsel evidenced no knowledge of any case law to support his argument. Lamont Keith Edwards acknowledges, upon his deposition in these proceeding, that he had sexual intercourse with the victim on a number of occasions, as had other young boys.

## III.

To establish a claim of ineffective assistance of trial counsel, the Petitioner must prove that he was denied his constitutional right to the effective assistance of counsel under the standard established by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland,* the court applies a two prong test. By the first prong, Petitioner must establish that counsel made serious errors that violated the Petitioner's right to the effective assistance of counsel guaranteed by the Sixth Amendment. Under the second prong, the Petitioner must prove that the inadequate performance significantly prejudiced the outcome of the trial. The errors must be of such significance as to deny the Petitioner an impartial trial with a dependable result. If a Petitioner fails to establish either prong, his claim must be denied.

Case law supports that a trial counsel's inadequate pre-trial investigation and preparation may give rise to a claim of ineffective assistance of counsel. In *Code v. Montgomery,* 799 F.2d 1481 (11th Cir.1986), the court held that defense counsel's inadequate pre-trial investigation of an alibi witness was ineffective assistance of counsel. *Id.* at 1483–84. In *Code,* trial counsel had failed to conduct an adequate pre-trial investigation by not contacting alibi witnesses. In the court's view, such action did not comport with competent professional judgment by defense counsel and the failure to effectively investigate the alibi witnesses deprived the

petitioner of his constitutional right to a fair trial.

The decision in *Code* is applicable to the circumstances of this case. Both of Petitioner's counsel recognize the significance of the testimony of Lamont Keith Edwards. Mr. Holmes obtained the information regarding Lamont Keith Edwards at a time well in advance of the trial, but did nothing meaningful with the information. By the testimony before this court, the court is satisfied that trial counsel was specifically (not obliquely) advised that Mr. Edwards claimed to have had sexual relations with the victim, along with other individuals. Such testimony was highly significant to the Petitioner in order to impeach the credibility of the victim and to overcome or at least explain the medical testimony introduced by the prosecution. In this court's view, defense counsel's efforts at locating Lamont Keith Edwards are wholly inadequate in light of the potential life sentence in this case. Counsel was fully aware of his right and opportunity to seek funds from the court to secure the assistance of an investigator to help locate Lamont Keith Edwards. As evidenced by the transcript of the testimony of Mr.Edwards, he had sexual intercourse with the victim about four or five times at her home. According to Mr. Edwards, other young people were also having sexual relations with the victim.

This court is well aware that there is a strong presumption that trial counsel provided ineffective assistance of counsel. *Harich v. Dugger,* 844 F.2d 1464, 1469 (11th Cir. 1988). In this instance, the court is fully satisfied that the failure of trial counsel to investigate, locate and call Lamont Keith Edwards as a witness was an unreasonable decision reflecting incompetent representation, which cannot be excused under the circumstances of this case. In *Nealy v. Cabana,* 764 F.2d 1173 (5th Cir.1985), the Court found counsel's failure to properly investigate an alibi witness was a relinquishment of counsel's duty to properly assist his client and was a violation of his client's Sixth Amendment rights. The circumstances in *Nealy* also presented a "swearing contest." Because trial counsel made little or no effort to investigate the witness and because this fail-

ure was not part of the trial counsel's strategy, the court found a "factual vacuum" in the evidence that violated the Sixth Amendment. *Id.* at 1178. Such is the case here. Not only did the unavailability of Mr. Edwards' testimony prejudice Petitioner, but it left other potential witnesses unavailable as well. Nothing suggested by trial counsel excuses or otherwise justifies this ineffective assistance.

This court further finds that the Petitioner has satisfied the second prong of *Strickland.* Trial counsel's lack of investigation left him wholly unprepared to defend against these serious allegations and prejudiced the results of the case to the extent that there can be no confidence in the outcome of the trial. Evidence of the victim's prior sexual intercourse with a person other than the Petitioner was admissible in the circumstance where the prosecution produced expert medical testimony to substantiate vaginal penetration consistent with sexual intercourse. *See Skipper v. State of Florida,* 537 So.2d 1138, 1139 (Fla. 5th Dist.Ct.App.1989); *Sadler v. State of Florida,* 509 So.2d 1139 (Fla. 5th Dist.Ct. App.1987); *Deel v. State of Florida,* 481 So.2d 15 (Fla. 5th Dist.Ct.App.1985). These cases stand for the proposition that where the prosecution relies upon medical testimony to support a child victim's claim of intercourse, the defendant may introduce testimony of prior sexual relations with the child victim involving someone other than the defendant.

In this instance, Dr. Matthew Khoury testified at trial, for the state, regarding the condition of the victim's genitalia. His testimony revealed that the victim showed signs of hymenal tear consistent with vaginal penetration. His testimony opined that such penetration was probably not from an object, but may have been from sexual intercourse. This testimony brings the Petitioner's case squarely within the case law which would allow him to introduce evidence of other sexual activity by the victim. In this instance where the case essentially involved a swearing contest between the accuser and the ac-

cused, the medical testimony was of considerable importance. The inability, due to counsel's inadequate investigation, to introduce competent, relevant evidence to discredit the victim and explain the medical testimony requires a conclusion that the outcome of the trial is unreliable.[3] *See Nealy v. Cabana,* 764 F.2d at 1173 ("Given that the missing witnesses directly contradict [Ewing's] testimony and support Nealy's theory of the case, Nealy has met his 'burden of showing that the decision reached would reasonably likely have been different absent the errors.'").

In conclusion, this court finds that the Petitioner has satisfied both prongs of *Strickland* and that Mr. Holmes' denied his client the effective assistance of counsel as guaranteed by the Sixth Amendment through his inadequate investigation and performance. This court is convinced that the outcome of this trial would have been different had counsel adequately prepared and performed, as required by the Constitution. It is this court's conclusion that Rodney Miller was denied his Sixth Amendment right to the effective assistance of counsel and that he is entitled to a new trial with competent counsel.

Accordingly, the court RECOMMENDS that the Petition for Writ of Habeas Corpus be Granted; that the writ shall issue commanding respondent, Harry K. Singletary to release the Petitioner from his custody unless within sixty days of the final Order of this court, he receives a new trial.

Respectfully submitted this 7th day of October, 1996.

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. 636(b)(1);

---

3. Counsel not only was unprepared to introduce the evidence, he was unprepared and apparently forgot to make a proffer of his cross-examination of the victim in this regard. As a result, his

appeal of the denial of cross-examination issue was required to be rejected and cannot be considered as a separate issue before this court.

Rule 72, Fed. R. Civ. Proc.; *see also,* Rule 6, Fed.R.Civ.P. and Local Rule 4.20.