IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 23, 2002

## RODNEY TIPTON v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Blount County**
**No. C-9186      D. Kelly Thomas, Jr., Judge**

---

**No. E2001-00001-CCA-R3-PC**
**June 28, 2002**

---

The Appellant, Rodney Lee Tipton, proceeding *pro se*, appeals from the dismissal of his petition for post-conviction relief.  Tipton was convicted by a Blount County jury of aggravated rape and aggravated robbery and received an effective thirty-three year sentence in the Department of Correction.  On appeal, Tipton argues that he should receive a new trial based upon the following grounds: (1) the State's refusal to respond to his discovery requests, and the post-conviction court's failure to address his motion to compel discovery; (2) denial of the right to represent himself at his post-conviction hearing; (3) denial of his right to testify at trial; (4) ineffective assistance of counsel; (5) prosecutorial misconduct; (6) actual innocence; (7) the cumulative effect of all errors; and (8) the post-conviction court's failure to enter specific findings of fact and conclusions of law.  After a review of the record, we affirm the dismissal of Tipton's petition for post-conviction relief.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Rodney Tipton, *pro se*, Mountain City, Tennessee.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Mark A. Fulks, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Edward P. Bailey, Jr., Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On January 7, 1991, around 11:30 p.m., the victim, Cynthia Blair, was shopping at the Red Food grocery store, located on West Broadway in Maryville, Tennessee.  She left the store and walked to her car.  Upon entering her car, a second vehicle pulled up behind her to block her exit.

A man, later identified as co-defendant, Robert Allen Davis, approached her vehicle and said, "Move over, bitch." Davis was wearing a ski-mask and carrying a revolver. She gave him the keys as demanded, and he started the car and drove out of the lot. Then, Davis ordered her to blindfold herself with a beach towel she had in the car. A second vehicle followed the victim's car. After driving for some distance, Davis stopped. The second vehicle stopped also, and a second man, later identified as the Appellant, got into the car with the victim and Davis. Davis and the Appellant drove the victim around at gunpoint, stopping at several different locations. During these stops and while inside the vehicle, the victim was vaginally and anally raped. Also, the victim was forced to perform fellatio and forcibly had cunnilingus performed on her.

The victim was then taken to a motel across the North Carolina state-line. Davis left the vehicle to get a motel room, leaving the victim alone in the vehicle with the Appellant, who was very intoxicated and about to pass out. She peeked from underneath the ski-mask covering her face and saw the gun on the dashboard. She tried to grab the weapon and throw it out the window. The Appellant caught her trying to grab the gun and a struggle ensued. During this struggle, the victim's mask came off, and she saw the Appellant's face. Once inside the motel room, she was again raped. During the early morning hours of January 8th, the assailants left the North-Carolina motel taking the victim with them. On this same day, the Appellant and Davis separated company leaving the victim with Davis. Thereafter, Davis wrecked the vehicle. He was successful, however, in obtaining assistance from a local resident in transporting himself and the victim to the Fort Loundon Motel, in Vonore, Tennessee. Davis and the victim entered the room, where Davis eventually passed out on the bed. At this time, the victim escaped to the hotel manager's office, where the manager called the police for assistance. After the police arrived Davis was taken into custody, and the victim was transported to the Sweetwater Hospital for medical attention.

This case presents a somewhat protracted procedural history. On January 14, 1992, the Appellant, after a trial by jury, was found guilty of aggravated rape, a class A felony, and aggravated robbery, a class B felony. The Appellant's convictions and sentences were affirmed on direct appeal. *See State v. Davis*, 872 S.W.2d 950 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1993).

On September 21, 1995, the Appellant filed a *pro se* petition for a writ of habeas corpus. On October 6, 1995, the habeas corpus petition was summarily dismissed because the judgments were found to be facially valid and the Appellant's sentences had not expired. The trial court also determined that if the petition was treated as one for post-conviction relief, then it was barred by the one-year statute of limitations. The trial court, on October 30, 1995, "amended" its prior ruling, concluding that the Appellant's petition, if treated as one for post-conviction relief, was not time-barred because the Appellant was entitled to a three-year limitation period rather than a one-year limitation period. However, the trial court again dismissed the petition without an evidentiary hearing because it found that the petition did not state proper grounds for post-conviction relief. The Appellant appealed this ruling on November 13, 1995. On March 21, 1996, this court remanded the Appellant's habeas corpus petition to the post-conviction court for consideration as a petition for post-conviction relief.

On December 15, 1995, while the Appellant's habeas corpus appeal was pending, the Appellant filed a *pro se* petition for post-conviction relief. On January 2, 1996, the post-conviction court found that the Appellant presented a colorable claim and appointed counsel to represent the Appellant. This latest filing resulted in the Appellant having two separate petitions for post-conviction relief pending in the trial court. On December 30, 1996, the trial court ordered that the two petitions be consolidated and counsel was appointed to represent the Appellant. Appointed counsel filed an amended petition for post-conviction relief on March 17, 1997, alleging prosecutorial misconduct, ineffective assistance of counsel, a defective indictment, and improper jury instructions as grounds for post-conviction relief. The State filed an answer to this petition on May 29, 1997.

On June 25, 1997, the Appellant filed a motion to remove appointed counsel and strike any pleadings or amendments filed by appointed counsel. The post-conviction court scheduled the motion to be heard when the Appellant's post-conviction petition was to be heard. The motion to remove appointed counsel was later denied, as well as all subsequent requests by the Appellant to represent himself.

On July 24, 1997, the Appellant filed a *pro se* amended petition. The State filed a supplemental answer in response to the Appellant's *pro se* amended petition on November 3, 1997. Also on November 3rd, after a partial hearing on the Appellant's petition, the post-conviction court determined that "failure to raise ineffective assistance of counsel on direct appeal [was] not ineffective assistance." Further hearings were held on February 4th, 5th, 6th, and 10th of 1998. The Appellant filed an additional *pro se* amended petition for post-conviction relief on July 24, 2000, and an argument in support of post-conviction relief on September 25, 2000. Closing arguments were made on September 26, 2000. Thereafter, on December 20, 2000, the post-conviction court denied relief as to all issues. This timely appeal followed.

**ANALYSIS**

The Post-Conviction Procedure Act, Tennessee Code Annotated §§ 40-30-201 to -310 (1997), provides a method by which a defendant may challenge a conviction or sentence for violation of a state or federal constitutional right. Tenn.Code Ann. § 40-30-203 (1997). In order to succeed on a post-conviction claim, the Appellant bears the burden of showing by clear and convincing evidence, the allegations set forth in his petition. Tenn. Code Ann. § 40-30-210(f) (1997). The Appellant raises the following issues for our review: (1) whether the post-conviction court erred by failing to address the Appellant's motion to compel discovery, when the State refused to respond to the Appellant's discovery requests in violation of Tennessee Supreme Court Rule 28 §§ 6(C)(7), 7(A); (2) whether the post-conviction court erred by denying the Appellant the right to represent himself in his post-conviction hearing; (3) whether the Appellant was denied his right to testify at trial; (4) whether the Appellant received ineffective assistance of counsel; (5) whether the post-conviction court erred by denying the Appellant's prosecutorial misconduct claim; (6) whether the post-conviction court erred by denying the Appellant's claim of actual innocence; (7) whether the

cumulative effect of all errors required a new trial; and (8) whether the post-conviction court failed to enter specific findings of fact and conclusions of law.

## I. Discovery

First, the Appellant contends that "the State failed to provide discovery after [he] requested the same" in violation of Tennessee Supreme Court Rule 28 §§ 6(C)(7), 7(A). He also argues that "the [post-conviction] court failed to ensure the State's compliance after [he] moved to compel discovery." Rule 28 § 6(C)(7), which governs discovery in a post-conviction proceeding, provides:

> Upon receiving the court's preliminary order, the state shall provide to petitioner discovery of all those items deemed discoverable under Rule 16, Tennessee Rules of Criminal Procedure, if relevant to the issues raised in the post-conviction petition, and shall provide any other disclosure required by the state or federal constitution.

Tenn. Sup. Ct. R. 28 § 6(C)(7). On December 30, 1996, the Appellant filed a *pro se* motion captioned, "Motion to Compel," and on July 24, 1997, he filed a motion captioned, "Motion for Discovery and for Production of Exculpatory Evidence." On January 21, 2000, appointed counsel filed a motion captioned, "Motion for Production of Evidence." None of these motions were brought to the attention of the post-conviction court for a ruling. Therefore, no violation of Rule 28 occurred. Moreover, even if the post-conviction court had ruled adversely with regard to the Appellant's discovery motions, it would have been incumbent upon the Appellant to have presented this issue within the context of a Rule 9 or 10, Tennessee Rules of Appellate Procedure, appeal, as opposed to within the purview of the present proceeding, a Rule 3 appeal as of right. Accordingly, we find this issue is without merit.

## II. Self-Representation

Second, the Appellant submits that the post-conviction court "erred by denying [his] right to self representation at his post-conviction hearing." During the post-conviction evidentiary hearings, the Appellant made two requests to exercise his right to self-representation. Both requests were denied. The Appellant has neither a constitutional nor a statutory right to self-representation in a post-conviction proceeding. *Cole v. State*, 798 S.W.2d 261, 263 (Tenn. Crim. App. 1990). The constitutional right to self-representation, guaranteed by both the Sixth Amendment to the United States Constitution and Art. I, § 9 of the Tennessee Constitution, is not applicable to post-conviction proceedings. *Id.*; *see also State v. Livingston*, M1998-00471-CCA-R3-CD (Tenn. Crim. App. at Nashville, Dec. 17, 1999).

However, the Appellant has a common law right to self-representation, which is recognized by Tennessee Supreme Court Rule 13 § 1. *Cole*, 798 S.W.2d at 263. The common law right to self-representation in a post-conviction proceeding is not a fundamental right, and a trial court is not barred from appointing counsel if necessary to aid in the proper administration of justice. *Johnson v. State*, No. 02C01-9111-CR-00237 n.4 (Tenn. Crim. App. at Jackson, Mar. 27, 1997) (citing *State*

*v. Reeves*, 610 S.W.2d 730, 731 (Tenn. Crim. App. 1980)); *see also Panyanouvong v. State*, No. M2000-03152-CCA-R3-PC (Tenn. Crim. App. at Nashville, Nov. 16, 2001) (Tipton, J., concurring); *but see Panyanouvong v. State*, No. M2000-03152-CCA-R3-PC (Tenn. Crim. App. at Nashville, Nov. 16, 2001) (holding that an appellant who sought substitution of counsel in a post conviction proceeding upon remand should be advised of the alternative of self-representation). Whether to substitute counsel is discretionary with the trial court. *State v. Gilmore*, 823 S.W.2d 566, 568 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1991).

> The discretionary nature of the power in question grows out of the fact that a prisoner has no absolute right to argue his own appeal or even to be present at the proceedings in an appellate court. The absence of that right is in sharp contrast to his constitutional prerogative of being present in person at each significant stage of a felony prosecution, and to his recognized privilege of conducting his own defense at the trial. Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system. Among those so limited is the otherwise unqualified right given by § 272 of the Judicial Code, 28 U.S.C. § 394 [now § 1654], to parties in all the courts of the United States to "plead and manage their own causes personally."

*Price v. Johnston*, 334 U.S. 266, 285, 68 S. Ct. 1049, 1060 (1948) (citations omitted). The record does not establish that the post-conviction court abused its discretion by denying the Appellant's requests that he be permitted to represent himself.

### III. Right to Testify

Third, the Appellant argues that he was denied the right to testify at trial. Specifically, he contends that trial "counsel unilaterally waived said right and rested the defense without introducing ANY defense." It is well established that a criminal defendant has a constitutional right to testify. *Momon v. State*, 18 S.W.3d 152, 157 (Tenn. 1999).[1] This right may only be waived personally by the defendant. *Id.* at 161. In determining whether a defendant has personally waived the right to testify, this court should "indulge every reasonable presumption against the waiver of a fundamental right." *Id.* at 162. The waiver of a defendant's right to testify will not be presumed from a silent record. *Id.*

At the post-conviction hearing, trial counsel testified,

Q. Did you and Mr. Tipton discuss whether or not he would be testifying at trial?

---

[1]The procedure adopted by the Tennessee Supreme Court in *Momon* to ensure that a defendant has personally waived his right to testify does not apply to the Appellant. The Appellant's trial was held seven years prior to our supreme court's holding in *Momon*, and the court in *Momon* expressly held that the procedures set forth "do not establish a new constitutional rule which must be retroactively applied," specifying that the procedure should be applied "in all cases tried or retried after the date of this decision." *Momon*, 18 S.W.3d at 162-63.

A. Yes, we did, at length.

Q. Did Mr. Tipton want to testify?

A. I can state that there's no question that Mr. Tipton was interested in testifying. I can tell you as defense counsel, in reviewing all of these facts that I was very strong in my belief that Mr. Tipton should not testify in this case. I recall specifically having discussions both at this trial, as well as the federal trial, as to whether or not he would testify. And I can candidly say that as the one making, I guess, the tactical decisions in the case, that I urged him not to do so. I can also say that, albeit with reluctance, Mr. Tipton, certainly to my belief, agreed that he would not testify and in fact did not, in either case.

Q. But it's your position that you never told him that you would not allow him to testify?

A. No. I've never done that with any client and will not do that with any client.

. . .

Q. And at that time, do you believe that he understood that while that was your strong opinion, that it was no more than that, that he still did have the right to testify?

A. Yes.

Q. Do you remember – do you recall affirmatively telling him that he, regardless of what you were telling him, still had a constitutional right to testify? Do you remember telling him that?

A. In those exact words, no; but something very similar, yes. And I say this from recollection of all my cases that you have an absolute right to testify and if you decide to go against my advice in a situation just like Mr. Tipton where I had advised him not to testify, that I will honor that request, but that professionally I may say something to the effect I feel that you're making a mistake by taking the stand in this case.

Q. Did you ever tell him that you would just sort of let him sit up there on his own, that you wouldn't –

A. No, not at all.

Q. – handle the questioning or anything?

A.  (Shakes head from side to side.)

The post-conviction court obviously accredited trial counsel's testimony that the Appellant personally waived his right to testify at trial.  This court will not reweigh or reevaluate the evidence; nor substitute our inferences for those drawn by the post-conviction judge, unless the preponderance of the evidence is otherwise.  *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are resolved by the post-conviction judge not this court. *Id.* Accordingly, after a review of the record before this court, we conclude that the Appellant has failed to prove by clear and convincing evidence his allegation that he was denied his right to testify at trial.

## IV.  Ineffective Assistance of Counsel

Fourth, the Appellant contends that he was denied effective assistance of counsel, both at trial and on appeal, due to counsel's:

(1) failure to investigate, make objections to or challenge prosecution's evidence;

(2) failure to investigate unknown hairs found in the victim's car and fingerprints found at the crime scene;

(3) failure to object to false evidence of PRIOR BAD ACTS introduced during the victim's testimony which was highly prejudicial;

(4) failure to move for mistrial or request curative jury instruction to the inadmissible and prejudicial PRIOR BAD ACTS evidence;

(5) failure to adequately cross-examine the victim who was the only link between [the Appellant] and the crime;

(6) failure to show the jury the irreparable tainted mis-identification of [the Appellant] as the 2nd assailant which occurred when the victim selected his very same photo as "identical" in the 2nd line-up after failing to do so in the 1st line-up;

(7) failure to show the jury that the victim lost her eyeglasses AND contact lenses and was without their benefit on the NIGHT of incident;

(8) failure to present any defense theory;

(9) failure to file a Motion for Severance;

(10) failure to object to prosecutor's improper comments on [the Appellant's] post-arrest silence;

(11) ordering [the Appellant] to stand up at trial for the victim to identify him as her 2nd assailant; and

(12) failure to raise on direct appeal trial counsel's waiver of the Appellant's right to testify.[2]

To succeed in a challenge for ineffective assistance of counsel, the Appellant must establish, under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984): (1) deficient representation, and (2) prejudice resulting from the deficiency. Thus, the Appellant must prove that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and the Appellant must demonstrate that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* A reviewing court need not consider the two prongs of *Strickland* in any particular order. *Id.* at 697. Moreover, if the Appellant fails to establish one prong, a reviewing court need not consider the other. *Id.*

With respect to deficient performance, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). This court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. We should defer to trial strategy or tactical choices if they are informed ones based upon adequate preparation. *Wright v. State*, No. 01C01-9105-CR-00149 (Tenn. Crim. App. at Nashville, Apr. 7, 1994), *perm. to appeal denied*, (Tenn. 1994), *cert. denied*, 513 U.S. 1163, 115 S. Ct. 1129 (1995) (citing *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). Additionally, this court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. Moreover, we note that defendants are not entitled to perfect representation, only constitutionally adequate representation.

To establish the prejudice prong of *Strickland*, the Appellant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* That is, the evidence stemming from failing to prepare a sound defense or present witnesses must be significant, but it does not necessarily follow that the trial would have otherwise resulted in an acquittal. *Brimmer v. State*, 29 S.W.3d 497, 508 (Tenn.

---

[2]The Appellant raises several other grounds of ineffective assistance of counsel in documents submitted to this court; however, these issue are not raised in his appellate brief. Because the Appellant has not briefed these issues to this court, they will not be addressed herein. *See* Tenn. R. App. Pro. 27(a)(7).

Crim. App. 1998) (citing *Nealy v. Cabana*, 764 F.2d 1173, 1178-79 (5th Cir. 1985); *Code v. Montgomery*, 799 F.2d 1481, 1483 (11th Cir. 1986)). "A reasonable probability of being found guilty of a lesser charge, or a shorter sentence, satisfies the second prong in Strickland." *Brimmer*, 29 S.W.3d at 509 (citing *State v. Zimmerman*, 823 S.W.2d 220, 225 (Tenn. Crim App. 1991)).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *see Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

**A. Trial counsel's failure to investigate, make objections to or challenge prosecution's evidence.**

The Appellant submits that trial counsel failed to show the suggestiveness of the second photo line-up; also, trial counsel failed to call any witness, specifically, Federal Bureau of Investigation (FBI) Agent James Bentley, to testify that the victim never clearly saw her second assailant's face. In support of this proposition, the Appellant points to an investigative report prepared by Agent Bentley. In the investigative report, Agent Bentley states, "[a Maryville police officer] advised that while [the victim] had never clearly seen the second individual's face, . . . an adequate composite drawing [was composed based information provided by the victim,] which bore a remarkable resemblance to RODNEY TIPTON." The Appellant's argument is better summarized as follows: trial counsel failed to discover this report, and if trial counsel had discovered such evidence, it would have shown that the victim did not positively identify the Appellant during the first photo array. However, at trial the victim testified that she saw the Appellant's face for a sufficient period of time to make an identification. Documentation introduced at trial overwhelming showed that the victim positively identified the Appellant during the first photo array. Furthermore, the victim was extensively cross-examined about her ability to make an identification of the second assailant. Because the Appellant has failed to show any prejudice, this issue is without merit.

**B. Trial counsel's failure to investigate unknown hairs found in the victim's car and fingerprints found at the crime scene.**

The Appellant contends that trial counsel's failure to investigate unknown hairs found in the victim's car and fingerprints found at the crime scene "was critical because NO EVIDENCE linked him to the crime except the victim's marginal identification." If the claim is based on a failure to properly investigate, then the evidence or witness must be produced so that the post-conviction judge can properly evaluate the evidence or the witness. *Black*, 794 S.W.2d at 757. The Appellant did not provide any evidence of what a proper investigation into the unknown hairs and fingerprints would have shown. We will not speculate as to what such an investigation might have revealed.

Accordingly, we find the Appellant has failed to establish this claim by clear and convincing evidence.

**C. Trial counsel's failure to object to prior bad act evidence introduced during the victim's testimony.**

Next, the Appellant argues that trial counsel was ineffective for failing "to object to false evidence of PRIOR BAD ACTS introduced during victim's testimony which was highly prejudicial (alleging that Tipton and Davis had broken out of jail, were fugitives from justice and had raped a woman in Georgia using a knife)." Even assuming for argument's sake that trial counsel was deficient in not objecting, we fail to see how, but for this single deficiency, the jury's verdict would likely have been different. *See* Strickland, 466 U.S. at 695. The central issue at trial was the victim's ability to identify her second assailant. The challenged evidence was not relevant to this issue. Based upon the totality of proof presented against the Appellant at trial, we find that the Appellant was not denied a fair trial with reliable results. Accordingly, we do not find prejudice.

**D. Trial counsel's failure to move for mistrial or request curative jury instruction to the inadmissible and prejudicial prior bad act evidence.**

As concluded in paragraph C above, the Appellant was not prejudiced by admission of the questionable evidence of prior bad acts. Accordingly, we conclude that if trial counsel had moved for a mistrial or requested a curative jury instruction, the result of the proceedings would not have been different. Again, because the Appellant has failed to show prejudice, we find this issue to be without merit.

**E. Trial counsel's failure to adequately cross-examine the victim.**

The Appellant submits that trial "[c]ounsel failed to adequately cross-examine the victim who was the only link between Tipton and the crime." The post-conviction court determined, "From the proof presented the petitioner received vigorous representation that far exceeded the standards for trial attorneys in the Fifth Judicial District." After a review of the record, we agree with the post-conviction court that trial counsel was vigorous in his cross-examination of the victim and in no way could the Appellant's assertion of ineffective assistance of counsel on this ground be supported. Moreover, we are compelled to note that allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics rarely provide a basis for post-conviction relief. Counsel has some discretion in conducting the defense and is entitled to use his best judgment in matters of trial strategy or tactics. *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1991) (citing *McBee v. State*, 655 S.W.2d 191, 193 (Tenn. Crim. App. 1983)).

**F. Trial counsel's failure to show the jury the irreparable tainted mis-identification of the Appellant as the second assailant.**

The Appellant claims that trial "[c]ounsel failed to show the jury the irreparable tainted mis-identification of Tipton as the 2nd assailant which occurred when the victim selected his very same photo as 'identical' in the 2nd line-up after failing to do so in the 1st line-up." The first photo array was conducted by State authorities on January 9, 1991, two days after the rape. On April 12, 1991, the FBI conducted a second photo array. According to testimony given at both the state and federal trials, the victim positively identified the Appellant as her second assailant on both occasions.

The Appellant essentially argues that the victim did not positively identify him during the first photo array, which tainted the second photo array. However, his claim is based upon certain evidence introduced during the federal trial and is circumstantial at best. Furthermore, the victim assisted in a composite drawing prepared on January 9, 1991, prior to the photo array, which bore a remarkable resemblance to the Appellant. The Appellant has failed to prove by clear and convincing evidence that the victim did not identify him at the first photo array. Accordingly, we find this issue to be without merit.

**G. Trial counsel's failure to show the jury that the victim lost her eyeglasses and contact lenses and was without their benefit on the night of the incident.**

Next, the Appellant contends, "In a case that SOLELY rested on eyewitness identification, counsel failed to show the jury that the victim lost her eyeglasses AND contact lenses and was without their benefit on the NIGHT of the incident." At the post-conviction hearing, the victim testified that she was able to make a positive identification of the Appellant. The Appellant has failed to show that the proffered evidence would have had any effect on the victim's ability to make such an identification. Because the Appellant has failed to show that he was prejudiced by trial counsel's failure, we conclude that this issue is without merit.

**H. Trial counsel's failure to present any defense theory.**

The Appellant specifically argues that trial counsel "failed to present 2 alibi witness McHaffie & Gurley who [A] placed Tipton away from the time and place of the crime; . . . and [B] supported Tipton's ONLY defense of mis-identification. . . ." At the post-conviction hearing, trial counsel testified,

> . . . And I have – again without thorough review of the file, I have some recollection of an alibi witness that was provided by Mr. Tipton and I recall either the inability to find this witness or a determination made that this witness's credibility was so suspect that he may not have been called.

It is apparent from trial counsel's testimony that he made a tactical decision not to use the Appellant's alibi witnesses. As previously stated, this court should defer to trial strategy or tactical

choices if they are informed ones based upon adequate preparation. *Wright*, No. 01C01-9105-CR-00149. Therefore, we find that the Appellant has failed to prove that trial counsel's performance was deficient.

**I. Trial counsel's failure to file a motion for severance.**

At the post-conviction hearing, trial counsel testified that he believed "previous counsel raised the issue and it was denied." He also testified, "from a tactical standpoint, I would have liked nothing better that to be severed from Mr. Davis. However, we could find no basis in law or fact that would lead us to believe whatsoever that a severance would have been granted." The Appellant contended at the post-conviction hearing that he would have received a fair trial only if his case had been severed from Davis', so he could have called Davis as a witness in his defense. However, the Appellant has not provided this court with any evidence that Davis would have testified in his defense. Furthermore, we agree with trial counsel that severance is not warranted under current law. *See* Tenn. R. Crim. Pro. 8(c). Trial counsel is under no duty to file meritless motions. Because deficient performance has not been proven, this issue is without merit.

**J. Trial counsel's failure to object to the prosecutor's improper comments on the Appellant's post-arrest silence.**

Next, the Appellant claims that trial counsel failed to object to "prejudicial remarks during closing argument referring to Tipton's failure to testify, lack of explanation of certain evidentiary discrepancies, and suggesting that Tipton was guilty because he stood up 'VOLUNTARILY' in court for victim's identification." Our courts have afforded wide latitude to counsel in arguing cases to the jury. *State v. Cribbs*, 967 S.W.2d 773, 783 (Tenn. 1998). Although arguments must be temperate, relevant to the material issues, and predicated on the evidence, both the prosecution and the defense must be allowed to argue not only the facts in evidence, but also any reasonable inferences therefrom. *See State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998); *Russell v. State*, 532 S.W.2d 268, 271 (Tenn. 1976). Contrary to the Appellant's assertion, we fail to ascertain how the State's closing argument translates into an argument referring to his failure to testify. As for the State commenting on the lack of explanation of certain evidentiary discrepancies, such is the nature of a closing argument. Finally, trial counsel did object when the prosecution suggested that the Appellant was guilty because he stood up voluntarily, and the post-conviction sustained the objection and cautioned the jury with regard to the statements of counsel. Accordingly, we find no error; therefore, trial counsel was not deficient for failing to object. This claim is without merit.

**K. Trial counsel's order to the Appellant to stand up at trial for the victim to identify him as her second assailant.**

Trial counsel testified at the post-conviction hearing,

I think the instance you're referring to is, upon Ms. Blair, the affiant's identification, Mr. Tipton – at that point, I suggested to Mr. Tipton that he just stand.

I did that on the premise that we were taking sort of a head-on approach to Ms. Blair in this case and that in my mind and what I believe in the Jury's minds there was no secret that Ms. Blair had been referring for the last hour to Rodney Tipton.

In hindsight, absolutely, I wished I had not asked Mr. Tipton to stand there. And I told him that, I think, at the end of the trial. . . .

Again, we note that counsel has some discretion in conducting the defense and is entitled to use his best judgment in matters of trial strategy or tactics. *Taylor*, 814 S.W.2d at 378. Accordingly, we find that the Appellant's assertion of ineffective assistance of counsel on this ground cannot be supported.

**L.  Appellate counsel's failure to raise on direct appeal trial counsel's waiver of the Appellant's right to testify.**

Because we have previously determined that the Appellant did not prove by clear and convincing evidence that he was denied his right to testify at trial, we find that trial counsel was not ineffective for failing to raise the issue on direct appeal. This issue is meritless.

### V.  Prosecutorial Misconduct

For the Appellant's fifth argument, he contends that he was "denied a fair trial through the cumulative effect of prosecutorial misconduct errors." He relies upon the following grounds in support of his prosecutorial misconduct claim: (1) suggestive photo arrays; (2) withholding exculpatory evidence; (3) suppression hearing misconduct; (4) suggestive in-court identification; (5) deliberate introduction of prior bad act evidence; and (6) prejudicial remarks during closing argument referring to the Appellant's failure to testify, lack of explanation of certain evidentiary discrepancies, and suggesting that the Appellant was guilty because he stood up "voluntarily" in court for the victim's identification.[3]  Initially, we note that "[t]he test to be applied in reviewing a claim of prosecutorial misconduct is 'whether the improper conduct could have affected the verdict to the prejudice of the defendant.'" *Brimmer*, 29 S.W.3d at 527 (quoting *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965)).

**A.  Suggestive photo arrays.**

The Appellant claims that the photo arrays were suggestive. The Appellant has previously raised this issue on direct appeal. In his direct appeal, the Appellant argued that the photo arrays were

---

[3]We elect not to revisit issue number four as raised by the Appellant in this section. The issue of trial counsel requiring him to stand was previously reviewed in paragraph K of the ineffective assistance of counsel section of this opinion. Likewise we will forego review of issue number six, which was previously addressed in paragraph J of the ineffective assistance of counsel section. Regarding issue number three, any suppression hearing misconduct, has previously been reviewed in paragraph F of the ineffective assistance of counsel section or will be reviewed in paragraph A of this section. In all instances, we concluded that the Appellant has failed to prove that he was prejudiced by the alleged errors. Therefore, we find further review of these issues unnecessary.

suggestive because the Appellant's "photo was larger than other suspects, distinctly complexed and lighted, and the only one with long hair." This court found that issue to be without merit. *See Davis*, 872 S.W.2d 950. This identical issue is again raised on appeal. Because it has previously been determined, any further review by this court is foreclosed. Tenn. Code Ann.§ 40-30-206(f) (1997).

**B.  Withholding exculpatory evidence.**

The Appellant contends on appeal that his conviction was based on the unconstitutional failure of the prosecution to disclose exculpatory evidence, citing as authority *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). Specifically, he contends that the State withheld the following exculpatory evidence:

> The State suppressed . . . evidence showing victim's inability to identify Tipton. Exh 18 @ 17: FBI statement dated 2/15/91 <u>after</u> 1st photo line-up: 2nd assailant still "an unknown individual" known as "Road Dog." Exh 19: FBI report dated 4/9/91 stating victim never saw 2nd assailant's face, <u>after</u> 1st photo line-up concluded. Exh 20: FBI letter dated 3/14/91 stating the victim only identified Davis <u>after</u> 1st line-up concluded. Exh 22: Police Report dated 2/1/91 referring to "2nd unknown subject" <u>after</u> 1st photo line-up concluded. Exh 24: Police Report dated 1/17/91 asking the feds to prosecute Davis only, on weapons charges, <u>after</u> 1st photo line-up concluded.
> . . . The police never disclosed any of it's DOCUMENTATION of 1st line-up. (<u>COMPARE</u> <u>TO</u> their revealed 2nd line-up documentation, Exh 2). At the time of post conviction evidentiary hearing, State Agents admitted that said documents were <u>STILL</u> in their files, <u>STILL</u> undisclosed to Tipton. R, IV @ 14.

Relief under *Brady* is not available unless the Appellant can establish that the evidence improperly withheld was material to the defendant. *State v. Edgin,* 902 S.W.2d 387, 389 (Tenn. 1995). In order to determine the materiality of undisclosed information, the reviewing court must ascertain whether in the absence of the information the defendant received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566 (1995). Thus, in order to prove a *Brady* violation, a defendant must show the "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* The Appellant bears the burden of demonstrating the elements of this claim by a preponderance of the evidence. *Smith v. State*, 757 S.W.2d 14, 19 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 1988).

The Appellant submits that the exculpatory evidence referred to proves that the victim did not positively identify him during the first photo array. However, as previously stated, this evidence is circumstantial at best. At trial the victim testified that she saw the Appellant's face for a sufficient period of time to make an identification. Documentation introduced at trial overwhelming showed that the victim positively identified the Appellant during the first photo array. The victim was cross-examined extensively about her ability to make an identification of her second assailant.

Furthermore, the victim assisted in a composite drawing prepared on January 9, 1991, prior to the photo array, which bore a remarkable resemblance to the Appellant. We find that the Appellant has not shown that the evidence was exculpatory to the Appellant or material to the defense. This issue is without merit.

## C.  Deliberate introduction of prior bad act evidence.

Next, the Appellant argues that prosecutorial misconduct occurred when the prosecution deliberately introduced "false prejudicial evidence of PRIOR BAD ACTS during the victim's testimony.  The prosecutor's deliberation and leading the victim to introduce highly inflammatory 'Georgia Story' can be seen" from the record.  As previously noted, the issue at trial was the victim's ability to identify her second assailant.  The challenged statement would have little effect on the jury's decision of whether the victim had observed the Appellant long enough to make a positive identification.  Accordingly, we conclude that the Appellant has failed to prove the alleged improper conduct affected the verdict to his prejudice. *See Brimmer*, 29 S.W.3d at 527.

## VI.  Actual Innocence

Sixth, the Appellant submits that "the prosecution in this case convicted an actually innocent man."  It is clear that post-conviction proceedings cannot be used to litigate the sufficiency of the evidence. *Holt v. State*, No. 03C01-9808-CR-00279 (Tenn. Crim. App. at Knoxville, Jan. 27, 2000) (citations omitted).  The evidence was determined to be sufficient on direct appeal. *See Davis*, 872 S.W.2d at 954-55.  Furthermore, no additional scientific proof of actual innocence was introduced by the Appellant at the post-conviction hearing. *See* Tenn. Code Annotated § 40-30-202(b)(2) (1997).  Accordingly, this issue is without merit.

## VII.  Cumulative Effect of All Errors

Next, the Appellant contends that the cumulative effect of all errors violates his constitutional rights. As this court has not found any error with respect to the Appellant's previous issues, we find this issue meritless.

## VIII.  Findings of Fact

Finally, the Appellant argues that the post-conviction court "failed to make findings of fact and conclusions of law concerning each issue presented." Upon the final disposition of every petition, the court shall enter a final order, and shall set forth in the order or a written memorandum of the case all grounds presented and shall state the findings of fact and conclusions of law with regard to each such ground. Tenn. Code Ann. § 40-30-211 (1997).  Even if not ideal in form, the order of dismissal in this case does set forth the reasons for the dismissal of the Appellant's petition. "[W]here the record of the proceedings contains the reasons of the trial judge for dismissing the petition, the record is sufficient to effectuate meaningful appellate review." *Herron v. State*, No. 03C01-9506-CR-00167 (Tenn. Crim. App. at Knoxville, Mar. 27, 1996) (citation omitted).

**CONCLUSION**

After a careful review of the evidence in this case, we conclude that the Appellant has not shown that he was denied a fair trial with reliable results. Accordingly, the judgment of the post-conviction court dismissing the Appellant's petition is affirmed.

_____
DAVID G. HAYES, JUDGE